

October 25, 2023

**VIA ECF**
The Honorable Nicholas G. Garaufis
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>United States v. Boustani, Case No. 18-cr-681</u>

Dear Judge Garaufis:

    We respectfully submit this letter pursuant to the Court's October 22, 2023 order directing Manuel Chang to respond to the Government's letter filed on October 20, 2023 (the "Letter").

    The Government is not attempting to protect Mr. Chang's rights. Rather, it is attempting to interfere with his Sixth Amendment right to the counsel of his choice. Neither of the two circumstances raised in the Letter warrants a *Curcio* hearing. Mr. Chang is well aware of our law firm's prior representation, and he is aware of who is paying his legal fees. He has reviewed the Government's Letter. He has also reviewed this letter and agrees with all of it. He does not believe any potential conflicts exist, and if there are any, he knowingly and voluntarily waives them.

    Notably, the same two AUSAs on this case who have now filed the Letter were the ones interfacing with Adam Ford during our firm's other, unrelated, prior representation of the Board of Directors (the "Independent Board") of Rawicz Energy ("Rawicz"). As such, these AUSAs are well aware that nothing from that representation had anything to do with the facts of this case. And the Government has been aware of Adam Ford's and Ford O'Brien's involvement in this case for four months. Obviously the Government did not just come to learn of a "potential conflict." Rather, it appears that the Government recently came to learn of how vigorous of a defense we intend to provide Mr. Chang.[1]

    As the Court noted at Mr. Chang's arraignment, it is important that Mr. Chang's case be adjudicated as quickly as possible given his five years of pre-trial detention. As a result, in these past four months during which the Government has been aware of our firm's Rawicz representation, the firm has put in hundreds and hundreds of hours representing Mr. Chang, drafting a motion to dismiss on speedy trial grounds, a motion to suppress, and other soon-to-be-

---

[1] Mr. Chang has rejected the Government's efforts to extract a guilty plea from him. The Government's decision to *now* raise a purported conflicts issue, after Mr. Chang rejected a plea offer and instead filed a motion to dismiss the case and suppress evidence, is not appropriate.

filed motions; engaging in factual discovery, interviewing witnesses, and reviewing countless pages of documents produced by the Government; among other endeavors to be trial-ready, if necessary, only months after arraignment.  The Government's Letter attempts to now remove our firm and have Mr. Chang lose the benefit of this work and knowledge, saddling him with counsel that could not possibly be prepared to defend Mr. Chang at trial in the spring of 2024—further extending the unconscionable pre-trial detention he is suffering.

As for the allegations underpinning the *Curcio* request: The Government speculates that a hearing is appropriate because "third parties may be paying" Mr. Chang's legal fees (something that is true of every defendant who is not represented by appointed counsel) and our firm has declined to respond in any way to this question.  There is nothing requiring Mr. Chang to disclose to the Government (let alone the public) whether a third-party is paying his fees and, if so, the identity of potential third-party fee payor.  The Government's rank speculation is not sufficient to warrant a hearing.

The Government also asks for a hearing because it claims that the firm has a potential conflict of interest representing Mr. Chang in this criminal case because the firm *formerly* represented the Independent Board of Rawicz to negotiate with the Government over the terms of sale of a Polish oil and gas concession.[2]  The Government advances that, notwithstanding that neither Rawicz nor its Independent Board have been implicated in any involvement whatsoever in the underlying criminal allegations here (nor did the firm represent them in connection with any investigation into wrongdoing), there is a potential conflict of interest because Rawicz was, through several other entities, partially owned by Iskander Safa.  Mr. Safa—to be clear—has not been indicted in connection with this case and can now never be indicted because all statutes of limitations have run.  Nevertheless, the Government names him in this public filing as a criminal co-conspirator.

The substance of the Government's conflicts analysis is wrong and appears to largely be based on cases where an attorney represented multiple codefendants or a defendant and a trial witness involving similar conduct at issue.[3]  That is not the case here.  The Government's speculation that this firm owes any duty of loyalty to Mr. Safa is also bizarre.  No one from this law firm has ever talked to Mr. Safa, and the fact that he was a partial owner of an entity that we represented does not create any attorney-client relationship or any ethical obligations to him personally. While our law firm, of course, owes continuing duties of confidentiality to the Independent Board of Rawicz, (and the entity in which Mr. Safa had a partial ownership interest), we can represent to this Court that our negotiations with the Government related to the sale of an oil field in Poland has nothing to do with the allegations here or Mr. Chang's defense.  We are in possession of no information that could assist Mr. Chang in his defense that we are ethically prohibited from using in his defense.

---

[2] Over 98% of all prior work was completed over three years ago, in the fall of 2020.  Since that time, our firm has engaged in *de minimus* work on their behalf until earlier this year, consisting entirely of sending emails updating the AUSAs as to corporate changes.

[3] *See also* Fed. R. Crim. P. 44(c)(1) (defining joint representation).

2

Moreover, Mr. Safa is a foreign national who was not a witness in the Government's first trial against Mr. Boustani, Mr. Chang's former co-defendant, who was acquitted. The Government alleges that Mr. Safa had some partial ownership interest in another company called Privinvest, which they alleged (but were unable to prove at trial) illegally sent money to the Government's main cooperator. Mr. Boustani testified at trial as to the legitimacy of the payments made by Privinvest. The firm's prior representation of the Independent Board for the sole purpose of negotiating an asset sale that was not, and is not, in this case, on the grounds that an individual (who is not a co-defendant or witness and never will be) has a partial ownership interest in that company (and its parent company), does not present a conflict of interest, potential or otherwise. For all these reasons there is no need for this court to appoint other counsel or hold a *Curcio* hearing.

### A. No hearing or disclosure is necessary regarding the payment of Mr. Chang's legal fees because the Government has not identified a potential conflict of interest.

Third party payment—even by a codefendant to shared counsel in a joint trial—does "not create even a potential conflict of interest" when the attorney lacks a "financial incentive or other reason" to advance the interest of the payor over the client. *Moreno-Godoy v. United States*, No. 07 CR 354, 2014 WL 1088300, at *33 (S.D.N.Y. Mar. 20, 2014) (internal quotation marks omitted); *see also United States v. Wells*, 394 F.3d 725, 735 (9th Cir. 2005) (rejecting defendant's argument that a co-defendant's payment of legal fees led to an actual conflict of interest).

Here, the Government has not articulated whom it has a good-faith basis to believe is paying Mr. Chang's legal fees, or what interests might be advanced above Mr. Chang's. While they speculate that Mr. Safa or an entity he partially owns has been paying, there is no basis for such conjecture. When the Government asked our firm who was paying Mr. Chang's legal fees, the only response provided—the same response we always provide—*is that we do not discuss payments of client invoices with the Government*. The question is obviously a fishing expedition in the hopes that it finds something that could be used to harm Mr. Chang's interests.

While it would not create a conflict, neither Mr. Safa, Privinvest, nor any other entity connected to Mr. Safa is paying Mr. Chang's legal expenses. As such, no hearing on this point is necessary.

If this disclosure is not sufficient and if the Court has any further questions about the payment of legal fees, Mr. Chang respectfully requests that the Court follow the *ex parte* procedure that Your Honor permitted in *United States v. Raniere*, 18-CR- 204 (NGG), ECF Dkt. No. 266 (E.D.N.Y. Jan. 9, 2019) (accepting submission of information related to defendants' legal fees *ex parte* and under seal).

**B. No hearing is necessary regarding the firm's prior representation of the Independent Board of Rawicz because the Government has not identified a potential conflict of interest, and Mr. Chang has waived any purported conflict.**

Courts have a duty to inquire about conflicts of interest, but only when they are "sufficiently apparent." *Wood v. Georgia*, 450 U.S. 261, 272 (1981). There is no "duty to inquire whenever, as a result of creative speculation, one could imagine a situation in which a conflict may have arisen." *United States v. Reichberg*, 5 F.4th 233, 246 (2d Cir. 2021) (holding no duty to inquire about a conflict of interest where an attorney for a defendant charged with bribery also assisted in the trial of a co-defendant since "[t]he district court here would have had to engage in such creative speculation to envision a conflict; [the defendants'] interests were by all accounts aligned, with both contesting their bribery charges to trial"); *see also United States v. Velez*, 354 F.3d 190, 198 (2d Cir. 2004) (same, courts are not "under a duty to inquire whenever, as a result of creative speculation, one could imagine a situation in which a conflict may have arisen.").

Here, the Government claims that the firm's prior representation of the Independent Board of Rawicz—an entity in which Mr. Safa has a partial ownership interest by way of his partial ownership of an entity several layers up a corporate string of entities—poses a potential conflict of interest because the Government intends to argue at trial that Mr. Safa—someone who is not a defendant in this case and not a witness—was allegedly involved in a kickback scheme. Letter at 7. But this allegation has nothing to do with the firm's former client or our representation, which was limited to negotiating over a Polish gas asset. Not even the most "creative speculation" could come up with a potential conflict given this set of facts.

The Government's assertion that the firm previously represented an entity partially owned by Mr. Safa and as such it owes a duty of loyalty to Mr. Safa is incorrect in several respects. Mr. Safa has not been, nor is he now, a client. The inferential leap that the firm's representation of a company that Mr. Safa has a partial interest in is akin to representing Mr. Safa is not how conflicts of interest work. This firm did not represent Mr. Safa at all, not in connection with asset sales, let alone this criminal case, nor did this firm represent Privinvest. Mr. Safa did not sit on the Independent Board and Rawicz is not owned, directly or indirectly, by Privinvest. Rather, Rawicz is owned by Palomar Energy Holdings, an entity that is unrelated to Privinvest, and in which Mr. Safa has a 33% interest. The scope of the firm's representation in the asset-sale negotiation was not representation involving investigating or defending purported misconduct. And, again, the Government knows this because the same AUSAs here participated in the asset sale negotiations with this firm for years.

Nor is the Government's suggestion that the firm "may have" learned confidential information that it cannot share with Mr. Chang, which it then suggests "could" impede the firm's ability to defend this case, based on anything other than, again, creative speculation. The Government does not explain *how* Mr. Ford's representation in negotiating an asset sale for Rawicz Energy (or any entity partially owned by Mr. Safa) would provide him with *any* information that could impede the firm's ability to defend Mr. Chang in this case. The Government participated in these negotiations with Mr. Ford during 2019 and 2020, and their

4

inability to point to anything on this front is telling.  Moreover, Mr. Chang is also represented by the undersigned, who was serving as an Assistant U.S. Attorney during the firm's prior representation of the Independent Board of Rawicz Energy and thus had no involvement in that representation.  The Government's speculations are unsupported and seem less designed to ensure that Mr. Chang and this Court is appropriately aware of a potential conflict and more designed to interfere with Mr. Chang's counsel of his choosing.

      Even if the Government's creative speculation could amount to a potential conflict of interest, a hearing is not necessary because Mr. Chang has been advised of the Government's filing and has elected to waive any potential conflict raised by Mr. Ford's prior representations.  The Second Circuit has held that "[w]hen . . . a conflict of interest poses only a slight risk of impairing a lawyer's representation, a district court may accept a defendant's waiver of the conflict without holding a *Curcio* hearing."  *United States v. Ward*, 85 F. App'x 246, 248 (2d Cir. 2004); *see also United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) ("Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government."); *Williams v. Meachum*, 948 F.2d 863, 866 (2d Cir. 1991) ("the interests of the defendant and the integrity of the judicial system are best protected by leaving this choice to defendant").

      Here, Mr. Chang has reviewed both the Government's Letter and this letter in response and has elected to waive whatever conflict "might" exist.  Under these circumstances, no hearing is warranted.

      Respectfully submitted,

      s/ Jamie Hoxie Solano
      Jamie H. Solano

Cc: All Counsel of Record (via ECF)