UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED STATES OF AMERICA

                                   Case No. 1:18-cv-00681

v.


JEAN BOUSTANI,
*et al.*


                  Defendants.
---------------------------------------------------------------x


**DEFENDANT MANUEL CHANG'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO SUPRESS EVIDENCE AND RETURN HIS 2018 CELLPHONE**

FORD O'BRIEN LANDY LLP
Adam C. Ford
Jamie H. Solano
Anjula Prasad
Arthur Kutoroff
275 Madison Avenue
24th Floor
New York, New York 10016

*Attorneys for Defendant Manuel Chang*

Dated: January 19, 2024

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

FACTUAL BASIS FOR SUPPRESSION..................................................................4

ARGUMENT AND AUTHORITIES .........................................................................6

I.   The Government's seizure of the 2018 Cellphone in July 2023 was an unreasonable, warrantless seizure for which the FBI lacked probable cause. .....................................6

II.  The Government's concealment of the phone's seizure, nearly month-and-a-half delay in obtaining a warrant, and failure to provide a copy of the warrant to counsel violates the Fourth Amendment and requires suppression. ...........................................8

III. The warrant affidavit lacked probable cause to establish that the 2018 Cellphone contained evidence of federal crimes and suffers from several misleading omissions and misstatements. ..................................................................................13

IV.  Suppression of the 2018 Cellphone is appropriate because the warrant is an overbroad, general warrant. ..........................................................................21

V.   Suppression and return of the 2018 Cellphone is appropriate because the good-faith exception to the exclusionary rule does not apply. ...................................................23

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

*Cases:*

*Andresen v. Maryland,*
   427 U.S. 463 (1976)......................................................................................22

*Coolidge v. New Hampshire,*
   403 U.S. 443 (1971)........................................................................................6

*Franks v. Delaware,*
   438 U.S. 154 (1978)......................................................................................24

*Groh v. Ramirez,*
   540 U.S. 551 (2004)......................................................................................14

*Illinois v. Gates,*
   462 U.S. 213 (1983)......................................................................................16

*Riley v. California,*
   573 U.S. 373 (2014)..............................................................10, 11, 21, 22, 25

*Robbins v. City of Des Moines,*
   984 F.3d 673 (8th Cir. 2021) ........................................................................6, 7

*United States v. Babcock,*
   924 F.3d 1180 (11th Cir. 2019) .......................................................................7

*United States v. Babilonia,*
   854 F.3d 163 (2d Cir. 2017).............................................................................7

*United States v. Buck,*
   813 F.2d 588 (2d Cir. 1987)...........................................................................22

*United States v. Colon,*
   250 F.3d 130 (2d Cir. 2001).............................................................................7

*United States v. Corbett,*
   2021 WL 4480626 (E.D.N.Y. 2021)................................................................8

*United States v. Falso,*
   544 F.3d 110 (2d Cir. 2008)...........................................................................16

*United States v. Galpin,*
   720 F.3d 436 (2d Cir. 2013)...........................................................................22

*United States v. Glover*,
   755 F.3d 811 (7th Cir. 2014) ..................................................................24

*United States v. Griffith*,
   867 F.3d 1265 (D.C. Cir. 2017) ................................................14, 20, 22

*United States v. Guzman*,
   1998 WL 61850 (S.D.N.Y. Feb. 13, 1998) ......................................14, 20

*United States v. Herron*,
   18 F. Supp. 3d 214 (E.D.N.Y. 2014) .................................................. 6-8

*United States v. Martin*,
   157 F.3d 46 (2d Cir. 1998)...................................................................8, 9

*United States v. Martin*,
   426 F.3d 68 (2d Cir. 2005)...............................................................17, 24

*United States v. Martino*,
   664 F.2d 860 (2d Cir. 1981).....................................................................14

*United States v. Neal*,
   500 F.2d 305 (10th Cir. 1974) ..............................................................16

*United States v. Ortiz*,
   143 F.3d 728 (2d Cir. 1998).....................................................................13

*United States v. Place*,
   462 U.S. 696 (1983)....................................................................................6

*United States v. Raymonda*,
   780 F.3d 105 (2d Cir. 2015)...................................................................23

*United States v. Rosario*,
   918 F. Supp. 524 (D.R.I. 1996)..............................................................20

*United States v. Santarsiero*,
   566 F.Supp. 536 (S.D.N.Y.1983)..........................................................20

*United States v. Smith*,
   967 F.3d 198 (2d Cir. 2020).................................................... *passim.*

*United States v. Tisdol*,
   544 F. Supp. 3d 219 (D. Conn. 2021)..............................................11, 13, 22

*United States v. Wagner*,
  989 F.2d 69 (2d Cir. 1993) .................................................................................13

*Walczyk v. Rio*,
  496 F.3d 139 (2d Cir. 2007) ..........................................................................13, 17

*Warden, Md. Penitentiary v. Hayden*,
  387 U.S. 294 (1967) ............................................................................................14

*Zurcher v. Stanford Daily,*
  436 U.S. 547 (1978) ............................................................................................20


*Constitution, Statutes and Rules:*

18 U.S.C. § 371 ..........................................................................................................23

Fed. R. Crim. P. 41(f)(1)(C) .....................................................................................13

Fed. R. Crim. P. 41(g) ...............................................................................................23

Fed. R. Crim. P. 41(h).................................................................................................23

## INTRODUCTION

Mr. Chang respectfully requests that his 2018 Cellphone be returned to his counsel, the data taken therefrom be destroyed, and any evidence recovered from the phone be suppressed in light of several unreasonable Fourth Amendment violations.  After concealing the fact for two months, the Government confessed that it seized Mr. Chang's personal cellphone (the "2018 Cellphone").  The defense later found out that the Government had demanded of the South African government back in 2018 that they seize Mr. Chang's phone on behalf of the United States.  This seizure violates Mr. Chang's Fourth Amendment rights on several fronts to a degree that compels the return of his 2018 Cellphone, destruction of all copies, and suppression of all fruits from it.  In the alternative, Mr. Chang respectfully requests a *Franks* hearing.

On December 29, 2018, Mr. Chang was arrested while he was in South Africa on a layover flight.  At that time, South African Border Police seized the 2018 Cellphone from Mr. Chang.  According to the Government, on July 20, 2023, the South African Police Services gave the 2018 Cellphone to the Federal Bureau of Investigation.  The Government *did not* have a warrant for the 2018 Cellphone, but nonetheless seized and secured the device in an FBI facility in the Eastern District of New York.  Both suppression and return of Mr. Chang's 2018 Cellphone are necessary and appropriate under the circumstances, for several reasons.

First, the Government lacked probable cause to initially seize the phone.  Mr. Chang is not on trial for longstanding narcotics trafficking or gang activity; he is alleged to have signed loan documents on a handful of occasions in connection with foreign transactions in 2013 and early 2014 in his official capacity on behalf of Mozambique at the explicit direction of the then-Minister of Defense and now-President, Filipe Nyusi.  Because the Government seized Mr. Chang's 2018 Cellphone without a warrant, the Government must establish that the warrantless

seizure was lawful; however, the Government has produced nothing to suggest that the agent who seized the device had probable cause to believe that a new phone taken 5 years *after* the allegations contained evidence of the crimes in the Indictment.[1]

Second, the Government waited nearly a month and a half to seek a warrant for the 2018 Cellphone, a delay that the Second Circuit in *United States v. Smith* unambiguously held is presumptively unreasonable and violates the Fourth Amendment.  The Government provided no justification for the delay to the magistrate judge who signed the warrant, nor have they provided an explanation to defense counsel.

Third, when the Government finally sought a warrant, they did so under seal and misled the magistrate judge, making several important misrepresentations and omissions in the affidavit. The Government failed to tell the magistrate judge that Mr. Chang left his position as the Minister of Finance of Mozambique in 2014 (a fact the affiant knew because it was in the Indictment and the larger prosecution team knew because they participated in the trial of Mr. Chang's alleged coconspirator that resulted in a full acquittal).  The Government led the magistrate judge to believe that the 2018 Cellphone "might have" been present at certain meetings and was used to divert loan proceeds to himself in 2013, but did not disclose that the phone model itself wasn't even available to be purchased until *May 2014*, making these conclusory assertions a factual impossibility easily verified by publicly available websites.  The Government also failed to tell the magistrate judge that Mr. Boustani, the only alleged coconspirator who the Government alleges had direct dealings with Mr. Chang, and who was

---

[1] The factual allegations between the Indictment and the Superseding Indictment that was operative when the phone was taken and the warrant drafted are substantially similar.  For purposes of this brief, Mr. Chang will use the word "Indictment" to refer to the Superseding Indictment.

acquitted of all charges, repeatedly testified under oath that he and Mr. Chang never engaged in any fraud.

But the Government did not stop there.  The Government's allegations in the search warrant affidavit reference the charges against Mr. Chang and then proceed to purportedly describe those allegations in the affidavit.  But instead of explaining the charges actually brought against Mr. Chang in the Indictment, the affidavit instead relies on a host of conclusory allegations suggesting that Mr. Chang was charged for using his 2018 Cellphone to orchestrate a foreign bribery scheme.  Mr. Chang is not charged with any count related to bribery; it is also notable that it is not a violation of U.S. law for any foreign government official to pay or accept a bribe.  To make the affidavit appear more fulsome, the Government included numerous allegations about *other individuals* who have no ties to the 2018 Cellphone, referenced email search warrants pertaining to *other individuals'* email accounts, and then misled the magistrate judge by making unsubstantiated conclusions that Mr. Chang "must have" communicated in furtherance of a bribery scheme via email, text, and with the cellphone.  A close review of the affidavit, however, reveals that it *does not mention a single email or text message that Mr. Chang ever sent*, much less communications sent in furtherance of an illegal scheme to induce U.S. investors into purchasing, essentially, foreign loans.

To make things worse, and notwithstanding a clear lack of probable cause, the warrant seeks authority to essentially seize virtually everything within Mr. Chang's phone from 2011 until the date it was taken in South Africa, including evidence of conspiring to commit *any* federal crime, *all communications* on the 2018 Cellphone, and "[a]ny information related to the use . . . of funds related to any project in Mozambique," a grant of authority that is woefully overbroad, particularly in light of the type of factual allegations in the affidavit.

Not surprisingly, the Government did not provide Mr. Chang or his counsel the receipt required by Rule 41 upon the warrant's execution, and then continued to conceal that the phone was in their possession for almost two months.  And even after disclosing that the Government had the phone, the Government ignored Mr. Chang's counsel's repeated attempts to inspect the 2018 Cellphone.  The Government's actions are unreasonable, and suppression is appropriate under the Fourth Amendment.

## FACTUAL BASIS FOR SUPPRESSION

Mr. Chang is charged with wire fraud conspiracy, securities fraud conspiracy, and money laundering conspiracy because he is alleged to have conspired to defraud U.S. investors who purchased syndicated loans on the secondary market while serving in his official capacity as the Minister of Finance of Mozambique.  ECF Nos. 137 & 524.  In December 2018, the Government demanded that South African authorities arrest Mr. Chang and seize his cellphone on its behalf. *See* Ex. 1 (Dec. 21, 2018 Letter from DOJ to South Africa).  In April 2019, the Government unequivocally represented to the South African government that its investigation into Mr. Chang was "complete."  Ex. 2 (Apr. 22, 2019 Letter from DOJ to South Africa).

Mr. Chang was finally extradited to the United States in July 2023.  On the same day the Government seized Mr. Chang's phone on July 20, 2023, it filed a letter with this Court outlining its Rule 16 discovery.  *See* ECF No. 473; Ex. A to Ex. 3 Solano Decl. (2023 Search Warrant Affidavit, hereinafter, "2023 SW Aff.," filed under seal).  The Government did not disclose in that letter that it had seized, and thus possessed, Mr. Chang's phone.  *Id.*  That day, the Government represented to Mr. Chang's attorney that discovery in the case would consist of the materials obtained from Mr. Boustani's trial; they did not disclose that they possessed the 2018 Cellphone at that time.  Ex. 4 (Ford Decl. ¶ 4).  On August 1, 2023, the Government had another

call with Mr. Chang's attorney but did not disclose that it had seized Mr. Chang's phone.  Ex. 5 (Kutoroff Decl. ¶ 3).

According to the date on the warrant, on August 31, 2023—42 days after the FBI seized the device, and four and a half years after it was seized by South African authorities at the U.S. Government's direction—the Government obtained a search warrant to search the 2018 Cellphone.  *See* Ex. B to Ex. 3 Solano Decl. (2023 Search Warrant, "2023 SW," filed under seal).  Notwithstanding its representations to South Africa that is investigation was long complete, the Government requested that the warrant be filed under seal, claiming that it was relevant to an "ongoing investigation," disclosure of which "may have a significant and negative impact on the continuing investigation."  2023 SW Aff. ¶ 75.  Sometime thereafter, the Government executed the search warrant.  The search warrant did not authorize delayed notification and commanded that the law enforcement officer executing the warrant "must give a copy of the warrant and a receipt for the property taken to the person from whom . . . the property was taken."  *See* 2023 SW.  The Government ignored this and did *not* provide Mr. Chang or his counsel with a copy of the warrant at execution, or at any time in the almost two months that followed.  *See* Ford Decl. ¶ 6.

On September 18, 2023—nearly two months after obtaining the phone, the Government finally disclosed to defense counsel that the 2018 Cellphone was in the Government's possession.  *Id*. at ¶ 5.  The Government, at this time, did not disclose that it had sought a warrant for the phone or that its prosecution team had obtained access to the phone without an appropriate filter protocol in place.  *Id.*  The next day, September 19, Mr. Chang's counsel requested additional information regarding the Government's authority to seize or search the phone.  Ex. A to Ex. 4 Ford Decl.  On September 20, 2023, Mr. Chang's counsel demanded that

the Government stop reviewing his 2018 Cellphone until an appropriate filter protocol had been put in place and reiterated the request that the Government immediately produce an extraction of the phone or make the phone available to Mr. Chang's counsel for inspection. *Id*. The following day, the Government finally produced the search warrant papers. Ex. B to Ex. 4 Ford Decl. The search warrant papers revealed that the search warrant was signed on August 31, 2023, but the Government did not provide the magistrate judge with any justification for the 42-day delay in obtaining a search warrant. *See* 2023 SW Aff.

The next day, on September 22, 2023, Mr. Chang's counsel demanded return of the 2018 Cellphone given the unreasonable delay under *United States v. Smith*. Ex. C to Ex. 4 Ford Decl. In response, the Government refused to permit Mr. Chang's counsel to review a copy of his 2018 Cellphone to adequately protect his privilege. Ex. D to Ex. 4 Ford Decl.

After much back and forth, on September 28, 2023, the Government represented that it did not possess the full extraction of the 2018 Cellphone, so it could not be produced to defense counsel. Ex. C to Ex. 3 Solano Decl. However, on October 3, the Government admitted that the lead case agent had possessed and had access to the extraction report since September 7, 2023, contrary to the Government's prior representations. Ex. D to Ex. 4 Solano Decl.

## ARGUMENT AND AUTHORITIES

### I.   The Government's seizure of the 2018 Cellphone in July 2023 was an unreasonable, warrantless seizure for which the FBI lacked probable cause.

A "warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Robbins v. City of Des Moines*, 984 F.3d 673, 680 (8th Cir. 2021); *see also United States v. Place*, 462 U.S. 696, 701 (1983); *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 484 (1971). The Government bears the burden of justifying a warrantless seizure. *See United States v. Herron*, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014)

(Garaufis, J.).  The Second Circuit has acknowledged that "the presence alone of a cell phone . . . is not inherently incriminating."  *United States v. Babilonia*, 854 F.3d 163, 180 (2d Cir. 2017).  And this Court has recognized that a warrantless seizure of a person's property requires, at the very minimum, probable cause.  *See Herron*, 18 F. Supp. 3d at 224.  Absent probable cause at the time of the seizure, a warrantless seizure of a person's effects is unreasonable and violates the Fourth Amendment.  *Robbins*, 984 F.3d at 680–81 (12-day seizure of cell phones and camera without probable cause was unreasonable); *United States v. Babcock*, 924 F.3d 1180, 1190–92 (11th Cir. 2019) (finding a two-day seizure of a cell phone required probable cause to be justified).  "[T]he probable cause determination is based upon the actual knowledge of the officer who issued the instruction [to seize the item]."  *Herron*, 18 F. Supp. 3d at 228 (citing *United States v. Colon*, 250 F.3d 130, 136 (2d Cir. 2001)).

Here, the Government took Mr. Chang's 2018 Cellphone on July 20, 2023, from South African authorities and placed it within an FBI evidence facility in the Eastern District of New York.  *See* 2023 SW Aff. ¶ 4.  There is no question that the FBI seized the phone without a warrant and did not obtain the 2018 Cellphone while searching Mr. Chang in connection with his arrest.  There was no probable cause to believe, in 2023, that a phone collected in 2018 contained evidence of financial crimes that alleged occurred in 2013 and 2014.

Mr. Chang's cellphone cannot be considered, as drug dealers' phones are colloquially called, a "tool of the trade."  The charges against Mr. Chang allege that Mr. Chang signed loan guarantee documents in his official capacity as the Mozambique Minister of Finance at the direction of the now-President, back in 2013 and early 2014, around four years prior to the phone's original seizure.  The allegations against Mr. Chang are exclusively tied to his official

acts and have nothing to do with phone conversations, much less conversations that plausibly could have taken place on his non-government-issued, personal 2018 Cellphone.

The Government's decision to conceal for several months the fact that it had seized Mr. Chang's phone as described above is telling.  Under these circumstances, the Government has the burden to show that the six-week warrantless seizure of Mr. Chang's 2018 Cellphone, coupled with its failure to timely supplement its Rule 16 disclosures that it possessed Mr. Chang's 2018 Cellphone, was reasonable, within a valid exception to the warrant requirement, and supported by probable cause known by the officer who gave the seizure instruction.  *See Herron*, 18 F. Supp. 3d at 228.

## II.   The Government's concealment of the phone's seizure, nearly month-and-a-half delay in obtaining a warrant, and failure to provide a copy of the warrant to counsel violates the Fourth Amendment and requires suppression.

The Second Circuit could not have been clearer when it issued its opinion in *United States v. Smith* in 2020—waiting a month to obtain a warrant to search a defendant's electronic device without "extenuating reasons" is "unreasonably long in violation of Fourth Amendment." 967 F.3d at 202.  This rule applies when the item to be seized comes to the Government from a third party, and when it is seized incident to arrest.  *See United States v. Martin*, 157 F.3d 46 (2d Cir. 1998); *United States v. Corbett*, 2021 WL 4480626, at *4 (E.D.N.Y. 2021) ("*Smith* equally applies in circumstances where, as here, a delay occurred between the time when the cell phone[ ] at issue [was] seized incident to the defendants' arrest, and the search warrant was approved by the court[.]").

"After seizing an item without a warrant, an officer *must* make it a priority to secure a search warrant that complies with the Fourth Amendment" because "[t]he right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that

the police will act with diligence to apply for the warrant." *Smith*, 967 F.3d at 205, 210 (internal quotations omitted). Accordingly, "'even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant.'" *Id.* at 205 (quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)).

While the Second Circuit made clear in *Smith* that ordinarily a month delay in securing a warrant is unreasonable and violates the Fourth Amendment, the Court outlined four factors that are generally relevant in determining whether a delay is unreasonable and requires suppression: (1) the length of the delay; (2) the importance of the seized property to the defendant; (3) whether the defendant had a reduced property interest in the seized item; (4) the strength of the state's justification for the delay. *Id.* at 206. A review of the factors show that the Government's delay here warrants suppression of the 2018 Cellphone.

First, the *Smith* decision makes clear that the length of the Government's delay in obtaining the search warrant was unreasonable. *Smith* involved a thirty-day delay, a factor to which the Second Circuit gave "independent weight," holding that "a month-long delay *well exceeds* what is ordinarily reasonable" because "if the police have probable cause to seize an item in the first place, there is little reason to suppose why they cannot promptly articulate that probable cause in the form of an application to a judge for a search warrant." *Id.* at 207. The Second Circuit also observed that in *United States v. Martin*, the Second Circuit held that even an 11-day delay could be unreasonable and "would normally expect police officers to secure a search warrant in considerably less time than" 11 days. *Smith*, 967 F.3d at 206 (citing 157 F.3d at 54). Here, the Government waited 42 days—nearly a month and a half—before obtaining a search warrant for the device. The delay is even more unreasonable because the Government had nearly five years to draft a warrant while the 2018 Cellphone sat in South Africa at the

9

Government's demand.  Tellingly, the Government in its original briefing has still refused to acknowledge when it first learned that it would receive Mr. Chang's 2018 Cellphone.  This factor strongly leans in favor of suppression.

Second, Mr. Chang had a significant property interest in his 2018 Cellphone.  The Supreme Court made clear in *Riley v. California* that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" as "a cell phone search would typically expose to the [G]overnment far *more* than the most exhaustive search of a house[.]"  573 U.S. 373, 393, 396 (2014) (emphasis in original).  The Second Circuit echoed this in *Smith*, noting that "[t]he sheer volume of data that may be stored on an electronic device . . . raises a significant likelihood that much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity."  967 F.3d at 207.  Accordingly, the Second Circuit has made clear that "seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests."  *Id.* at 213.

Here, Mr. Chang's 2018 Cellphone contains his personal communications and several aspects of his personal life, including the death of his wife, the death of his brother, photographs of his children and grandchildren.  The 2018 Cellphone contains *Brady* material, and other sensitive information having absolutely nothing to do with the alleged events of 2013-2014.  Mr. Chang's privacy and privilege interests are paramount, and Rule 16 even recognizes that a defendant must be permitted to inspect an item belonging to a defendant, regardless of the Government's intentions to use the item at trial.  Here, as soon as the Government finally disclosed that it had seized Mr. Chang's 2018 Cellphone, his lawyers immediately demanded the legal authority for the search and seizure and, when it was apparent that the Government's

10

actions had violated the Constitution, Mr. Chang's lawyers immediately demanded the 2018 Cellphone's return.  Under these circumstances, this factor leans in favor of suppression.

The third factor also cuts in Mr. Chang's favor.  While Mr. Chang has been arrested, "[t]he fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely."  *Riley*, 573 U.S. at 392.  Mr. Chang's 2018 Cellphone, obviously, is not inherently criminal, nor does it have independent evidentiary value to this case.  As discussed throughout this brief, there is no probable cause that the 2018 Cellphone has evidence of any crimes contained therein.  Here, as in *Smith*, Mr. Chang owned the 2018 Cellphone, and it was involuntarily taken from his person.  *See Smith*, 967 F.3d at 208.  Here, as in *Smith*, Mr. Chang has never consented to the search of the 2018 Cellphone; quite the opposite, his counsel has repeatedly demanded its return and for the Government to stop the search.  *Id.*  Here, as in *Smith*, Mr. Chang "did nothing to reduce his property interest by means of consent or voluntarily relinquishing control of his" phone.  *Id.*  This factor countenances in favor of suppression.

The fourth factor—the Government's justification for its delay in obtaining the warrant— also countenances Mr. Chang's requested relief.  "[T]he general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence."  *Id.* at 213; *see also United States v. Tisdol*, 544 F. Supp. 3d 219, 227 (D. Conn. 2021) (finding search unreasonable and in violation of the Fourth Amendment where "the Government's complete lack of explanation for the month-long communication failure between two of the officers actively investigating matters pertaining to Defendant totally disregards the temporal limitations of the Fourth Amendment's reasonableness requirement").  Here, the search warrant affidavit provided no information that would justify the Government's delay to obtain a

warrant, nor has the Government offered any in its prior briefing or in discovery.  The affidavit reflects, instead, that the agent who eventually procured the warrant was in a white-collar (*i.e.*, non-reactive) squad and had been an agent for roughly a year.  The agent did not highlight a single other investigation that the agent was assigned to, much less a more pressing matter than timely obtaining a warrant for the 2018 Cellphone.  The agent was assisted by no less than *four* federal prosecutors, two of whom participated in the trial of Mr. Chang's alleged coconspirator and were familiar with this case.

The Government did not provide the magistrate judge with any excuse for the delay because there is no excuse.  This is a case that was indicted in 2018 for Mr. Chang's conduct that allegedly occurred in 2013 and 2014.  The Government previously represented to South Africa in 2019 that this was *not* an "ongoing investigation," and the case against his co-defendant was tried four years ago and resulted in a full acquittal of all charges.  This factor, thus, leans heavily in favor of suppression.

Further, Mr. Chang submits that, in determining whether the delay warrants suppression, this Court should also consider that the Government concealed the fact that they directed South Africa to take the phone on its behalf in 2018 and also hid that they seized the 2018 Cellphone in the United States for two months, notwithstanding that they were under Rule 16's discovery obligations to disclose that the device was in their possession and permit Mr. Chang the opportunity to inspect the device.  The Government obtained the late search warrant *under seal*, notwithstanding that Mr. Chang was represented by counsel, was in custody, the case had been indicted, and a public trial occurred several years prior regarding these allegations.  Nor did the Government provide Mr. Chang (or his counsel) with a copy of the search warrant when the warrant was executed in violation of Rule 41(f)(1)(C), and the warrant's language itself, which

did not permit delayed disclosure.  *See* Fed. R. Crim. P. 41(f)(1)(C).  The Government waited

more than two weeks after the warrant had been obtained to tell Mr. Chang that they had seized

and searched his 2018 Cellphone, and even then, continued to withhold the warrant papers that

showed unconstitutional delay.  None of these actions were reasonable, and they cut in favor of

suppressing evidence from the 2018 Cellphone.

"[T]he Second Circuit explicitly put law enforcement on notice that month-long,

unjustified delays will no longer be tolerated[.]"  *Tisdol*, 544 F. Supp. 3d at 227.  The above must

"inform the application of the exclusionary rule in future cases."  *Smith*, 967 F.3d at 213.  The

facts here plainly warrant suppression under *Smith*.

### III.   The warrant affidavit lacked probable cause to establish that the 2018 Cellphone contained evidence of federal crimes and suffers from several misleading omissions and misstatements.

Suppression of the 2018 Cellphone is further appropriate because the search warrant

lacked sufficient allegations to establish probable cause to believe that the 2018 Cellphone

contained evidence of federal crimes.  "In evaluating probable cause, a magistrate is always

required to consider whether the facts adduced in the warrant application 'appear[ ] to be current,

*i.e.*, true at the time of the application,' or whether they have 'become stale.'"  *Walczyk v. Rio*,

496 F.3d 139, 162 (2d Cir. 2007).  The "facts in an affidavit supporting a search warrant must be

sufficiently close in time to the issuance of the warrant and the subsequent search conducted so

that probable cause can be said to exist as of the time of the search and not simply as of some

time in the past."  *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993).   The "[t]wo critical

factors in determining whether facts supporting a search warrant are stale are 'the age of those

facts and the nature of the conduct alleged to have violated the law.'"  *United States v. Ortiz*, 143

13

F.3d 728, 732 (2d Cir. 1998) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)).

Critically, "probable cause to arrest a person will not itself justify a warrant to search his property." *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017). "Regardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that 'evidence is likely to be found at the place to be searched.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 568, (2004)). A "law enforcement agent seeking a search warrant must, at a minimum, aver some fact that connects a suspect's [place to be searched] to his alleged participation in criminal activity." *United States v. Guzman*, 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) ("[t]here must, of course, be a nexus . . . between the item to be seized and criminal behavior").

Here, the factual allegations in the warrant are almost entirely removed from the "defrauding U.S. investor" charges against Mr. Chang set forth in the Indictment. The factual allegations pertaining to Mr. Chang in the search warrant affidavit are the following:

- Mr. Chang met Andrew Pearse, a Government cooperator, at a meeting in February 2013 to discuss one of the projects and sign a loan guarantee. 2023 SW Aff. ¶ 31.

- Mr. Chang met with Surjan Singh, another Government cooperator, at a meeting in August 2013 to discuss that one of the projects would be sold as a bond to public, international investors. 2023 SW Aff. ¶ 41.

- Mr. Pearse told the Government that Mr. Boustani, an accused coconspirator who went to trial and was acquitted of all charges, told Mr. Pearse that he met Mr. Chang in the South of France in 2013, and that sometime in September 2013, Mr. Boustani told Mr. Pearse that at some prior, unidentified time, Mr. Chang called Mr. Boustani "about" one of the bonds. 2023 SW Aff. ¶ 43.

- During various months in 2013 and in May 2014, Mr. Chang signed loan guarantee documents in his official capacity as the Finance Minister of Mozambique. 2023 SW Aff. ¶¶ 32, 34, 36, 40, 49, 60.

- The affiant reviewed bank records that show three payments in 2013 were made to a bank account for "Thyse International" that the affiant "submits" is controlled by Mr. Chang (but does not describe how or otherwise provide evidence to support this conclusion). 2023 SW Aff. ¶¶ 15, 58.

- The affiant reviewed a record maintained by a business executive that reflects, at some unidentified point in time, payments made to Mr. Chang. 2023 SW Aff. ¶¶ 33, 63.

- Mr. Boustani's Google account included a telephone number contact for a "Manuel Chang" and Mr. Boustani sent a message to this phone number unrelated to any illegal activity in July 2016. There is no allegation that anyone responded to that text message, much less that Mr. Chang responded to that text message. 2023 SW Aff. ¶ 65.

The nature of Mr. Chang's activity outlined in the affidavit—signing loan documents in his capacity as Mozambique's Minister of Finance, having two in-person meetings in 2013 where nothing illegal was alleged to have been discussed, and an allegation that Mr. Chang made one phone call to an individual who was fully acquitted of all charges sometime prior to September 2013 purportedly about a bond, does not establish probable cause to believe that any evidence of a federal crime would be on Mr. Chang's personal cell phone over five or, now, 10 years later. While Mr. Chang's alleged coconspirators are documented as having communicated about various aspects of a purported bribery scheme via text message and email, *there is not a single allegation in the affidavit to support that Mr. Chang did so*, or discussed *anything criminal*, much less criminal activity in furtherance of the pending charges.[2]

Moreover, the affidavit does not explain why there would be reason to believe that Mr. Chang would be carrying official Mozambique loan documents on his personal cellphone for a deal that occurred four or five years prior. Mr. Chang left his position as the Minister of Finance in December 2014—*a fact completely omitted from the affidavit.* Under these circumstances, the

---

[2] Additionally, the affidavit fails to include that Mr. Boustani testified at trial and made very clear that he never conspired with anyone to defraud investors, nor did he conspire with anyone to launder money. *See* Ex. E to Ex. 3 Solano Decl. (excerpts of Boustani trial testimony).

age of the facts and the nature of the conduct that was purportedly illegal—defrauding investors—makes clear that any probable cause that existed in 2013 was long stale five years later when Mr. Chang's personal cellphone was seized.[3]

The affiant makes several unsupported conclusory statements that are either based on recklessly false assumptions or, at best, are recklessly misleading.  First, the affiant swears, without any supporting evidence of Mr. Chang's phone activity, that there was "probable cause to believe that [Mr. Chang] . . . communicated with other parties of the scheme by email, electronic messaging, and telephone . . . to generally communicate regarding the scheme and negotiate and coordinate payment and receipt of bribes to him."  2023 SW Aff. ¶ 7.  But "an individual's Fourth Amendment right cannot be vitiated based on fallacious inferences drawn from facts not supported by the affidavit."  *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (Sotomayor, J.).  The Supreme Court has made clear that "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" is not "[s]ufficient information . . . presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."  *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The affidavit here contains *no allegation where Mr. Chang was even the recipient, much less the sender, of a single email,* and there is *no allegation* that Mr. Chang *ever* communicated via text message about illegal conduct.  The affidavit does suggest that the Government reviewed

---

[3] *Accord United States v. Neal*, 500 F.2d 305, 309 (10th Cir. 1974) (probable cause was stale where participation existed "from 'about November, 1970, to August, 1971'" but "[t]here is no reference in the affidavits as to what occurred during the three months after the discontinuance of Green's participation and there is no information from which it could be inferred that the operation continued or that the material sought to be recovered remained" in the area to be searched).

the content of approximately 23 different email accounts controlled by other people, but other alleged coconspirators' communications in a case of this nature do not establish probable cause for Mr. Chang, because "probable cause to search must be based on particularized information about the place to be searched, not simply on a target's 'mere propinquity to others independently suspected of criminal activity.'" *Walczyk*, 496 F.3d at 163 (quoting *United States v. Martin*, 426 F.3d 68, 81 (2d Cir. 2005)). The lack of facts to support the assertion notwithstanding the broad review of alleged cococonspirators' email accounts cuts against, not in favor, of probable cause to believe there would be evidence on the 2018 Cellphone.[4]

The affiant declares further that, in light of the allegation that Mr. Chang attended a meeting in 2013 in France, Mr. Chang "may have" used the 2018 Cellphone to contact others during his travel. *See* 2023 SW Aff. ¶ 65. This is not evidence of illegal activity. And, again, this conclusory speculation is based on several assumptions that are belied by important and obvious facts left out of the affidavit. First, there is nothing in the affidavit that would connect a phone number or a phone call purportedly made in 2013 to the 2018 Cellphone itself. The affidavit contains no facts to link the 2018 Cellphone—Mr. Chang's personal phone—to a device he carried with him during an alleged 2013 work meeting while he held a different job.

Moreover, a rudimentary review on a publicly available website reveals that the 2018 Cellphone *could not have been used* by Mr. Chang during the 2013 time period, and thus *would*

---

[4] Additionally, while the Government included reference to irrelevant email search warrants for accounts that did nothing to reveal probable cause for Mr. Chang, they did not tell the magistrate judge that in December 2018—the same month when Mr. Chang's 2018 Cellphone was seized by South Africa—the Government obtained several pen registers for electronic accounts the Government believed were controlled by Mr. Chang, including an email account and a WhatsApp account (which listed a phone number purportedly for Mr. Chang). None of the data from that process was included as probable cause to support the warrant, suggesting further that Mr. Chang's activity on these accounts served no evidentiary purpose.

*not have been used, as the affiant suggests in the affidavit, to contact anyone, or accompany Mr.*

*Chang as he traveled, in 2013.*  The IMEI (a device-specific serial number located on all phones

and described in the search warrant) reveals that the 2018 Cellphone is a Huawei Model Ascend

P7 smartphone; that model phone was not released until *May 2014*—several months *after* the

purported travel and conversations took place.  *See* Ex. F to Solano Decl. & ¶ 4.  Obviously,

because the 2018 Cellphone did not exist while the events and actions attributed to Mr. Chang

were occurring, there is *no probable cause to believe* that they would have evidence of these

events occurring.

      Finally, the affiant similarly declares that there is "probable cause to believe that [Mr.]

Chang used the [2018 Cellphone] to coordinate his receipt of bribe payments" and that there is

"probable cause to believe that" he used the 2018 Cellphone "as part of the scheme to defraud

investors by diverting loan proceeds to illegal bribes and kickbacks."  2023 SW Aff. ¶¶ 24, 66.

This unsupported conclusion is, again, belied by several key points omitted from the affidavit.

      First, as discussed above, it is a factual impossibility that the 2018 Cellphone was used to

coordinate any alleged payments in 2013.[5]  Second, the affidavit omits that Mr. Boustani not

only was acquitted of all charges, he also testified that Mr. Chang "never" asked for a payment in

exchange to do something, and that Privinvest "never" asked Mr. Chang to do anything in

exchange for a payment.  Ex. E to Ex. 3 Solano Decl.

      Notwithstanding these exculpatory facts that were required to be included in the

application but omitted, the paragraph continues, that based on the affiant's "training and

---

[5] While the affiant incorrectly states that the Mr. Boustani sent an email to some unidentified
recipient on October 13, 2014, the email the Government has produced in discovery reflects that
this email was sent a year earlier, in October 2013.  *See* Ex. G to Solano Decl. (email sent on
October 17, 2013).

experience," "people often use cellular telephones, not only to communicate with others about bribery schemes, but also to access internet websites in furtherance of the scheme." 2023 SW Aff. ¶ 66. Thus, the affiant concludes, "there is probable cause to believe [Mr. Chang] used his cell phone to check the account records of the bank account controlled by [Mr. Chang] that received the bribe payments intended for [Mr. Chang]." *Id.* For one, it is not clear if the Government is even alleging that Mr. Chang controlled the bank account itself or the entity that held the bank account, as the Indictment appears to allege only that Mr. Chang controlled the entity, not the bank account.

In other words, while the affidavit contains no factual allegations that Mr. Chang used the 2018 Cellphone (or any cellphone or email account) to communicate with others, much less in furtherance of a conspiracy to defraud U.S. investors of information they would like to know, no facts to support the affiant's bare conclusion that Mr. Chang "controlled" the entity and/or bank account, no allegations to evidence that Mr. Chang continued to control the entity or the account in 2018, and no allegations to support that the bank at which the account allegedly existed even offered online banking or banking capable of being viewed from a cell phone, much less that there would be any reason to believe that a cell phone would maintain website login history for over five years, probable cause nonetheless existed because some people use their cell phones to access the Internet and check their bank accounts. That is not probable cause; if it were, there would be no limit on the Government's authority to search and seize *anyone's* cellphone at *any* time.

Courts have recognized that these sorts of conclusory allegations are insufficient to support a reasonable, constitutional search. The Supreme Court has made clear that "mere conclusory statement[s]" that "give[] the magistrate virtually no basis at all for making a

judgment regarding probable cause" are not sufficient to establish probable cause. *Gates*, 462
U.S. at 239. "Permitting 'a search warrant based solely on the self-avowed expertise of a law-
enforcement agent, without any other factual nexus to the subject property, would be an open
invitation to vague warrants authorizing virtually automatic searches of any property used by a
criminal suspect.'" *Guzman,* 1998 WL 61850, at *4 (quoting *United States v. Rosario,* 918 F.
Supp. 524, 531 (D.R.I. 1996)). "By way of expert opinion, law enforcement agents could
effectively eviscerate the rule that "[p]robable cause to arrest an individual does not, in and of
itself, provide probable cause to search that person's home or car." *Id. (*quoting *United States v.
Santarsiero,* 566 F. Supp. 536, 538 (S.D.N.Y.1983)); *see also Zurcher v. Stanford Daily,* 436
U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the
property is suspected of [a] crime but that there is reasonable cause to believe that the specific
'things' to be searched for and seized are located on the property to which entry is sought.").

The D.C. Circuit's opinion in *United States v. Griffith* is instructive. 867 F.3d at 1274.
There, the Court vacated a defendant's conviction after finding that evidence obtained from a
cell phone searched pursuant to a warrant should have been suppressed. In holding that
suppression was appropriate because the information in the affidavit was stale and based far too
heavy on generalized conclusions, the Court rejected the sufficiency of conclusory allegations
heaped on stale factual allegations, noting that [b]ecause a cell phone, unlike drugs or other
contraband, is not inherently illegal, there must be reason to believe that a phone may contain
evidence of the crime…" *Id.* at 1274–75. Under those circumstances, the Court concluded that
"[f]inding the existence of probable cause in this case . . . would verge on authorizing a search of
a person's home almost anytime there is probable cause to suspect her of a crime," which the
Court rejected. *Id.* at 1275.

Here, there are no factual allegations to tie the 2018 Cellphone to any activity in 2013, and there were significant facts omitted from the affidavit that make clear not only that the 2018 Cellphone *was not present* in 2013.  Mr. Chang no longer serving as the Minister of Finance as of December 2014 removed any probable cause to believe that Mr. Chang had evidence of the 2013 allegations on his personal 2018 Cellphone.  The conclusory allegations stacked upon stale allegations do not provide probable cause collectively any more than they do individually.  A finding otherwise would open the floodgates to permit the search of any foreign national's phone who purportedly spoke to someone the Government has alleged was involved in a criminal conspiracy.  The Fourth Amendment does not permit such a thing.

**IV.    Suppression of the 2018 Cellphone is appropriate because the warrant is an overbroad, general warrant.**

Even assuming *arguendo* that there was probable cause to permit the search of the 2018 Cellphone to recover some limited category of evidence like bank login history, the search warrant that the Government sought in this case was overbroad.  General warrants are abhorrent to the Constitution.  "[T]he Fourth Amendment was the founding generation's response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity," and, in fact, "[o]pposition to such searches was in fact one of the driving forces behind the Revolution itself."  *Riley*, 573 U.S. at 403.  "Modern cell phones are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans 'the privacies of life[.]'"  *Id.*  "The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought."  *Id.*

"The Government's natural desire to have a complete understanding of the facts, standing alone, likely does not always justify seeking the total inventory of an individual's history through the data on his or her cell phone." *Tisdol*, 544 F. Supp. 3d at 229 (citing *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (warning of the "enormous" "potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive"); *Smith*, 967 F.3d at 207 (emphasizing "the special concerns that apply when law enforcement seize and search people's personal electronic data and communication devices" because they contain "such vast quantities of irrelevant private material"); *Riley*, 573 U.S. at 393 (observing that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person[,] ... notabl[y in] their immense storage capacity.")). A warrant must "specify the items to be seized by their relation to designated crimes." *Galpin*, 720 F.3d at 446; *United States v. Buck*, 813 F.2d 588, 590–92 (2d Cir. 1987) (finding overbroad a warrant authorizing the seizure of "any papers, things or property of any kind" relating to the specified crime because it failed to limit the type of evidence to be seized).[6]

As the Supreme Court held in *Riley*, to allow the police unguided review of the entire contents of a cell phone when executing a search warrant would authorize the exact type of general warrant that the Fourth Amendment forbids. 573 U.S. at 397 ("Indeed, a cell phone search would typically expose to the Government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the

---

[6] Moreover, "[t]he warrant's overbreadth is particularly notable because police sought to seize otherwise lawful objects: electronic devices," as opposed to a search for weapons or narcotics, for which courts "have allowed more latitude[.]" *Griffith*, 867 F.3d at 1276. Such a search "call[s] for special 'care to assure [the search is] conducted in a manner that minimizes unwarranted intrusions upon privacy.'" *Id.* (quoting *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976)).

home; it contains a broad array of private information never found in a home in any form—unless a phone is") (emphasis in original).

Here, the warrant's authorization included evidence of conspiring to commit *any U.S. federal crime* (18 U.S.C. § 371), during a time period spanning nearly nine years—from 2011 to December 2018, including "the content of all communications" contained on the phone, all evidence concerning the identity of unidentified "suspects," of *any federal crime*, all records involving Mr. Chang's travel from 2011 through 2018 (notwithstanding that the allegations involving Mr. Chang traveling relate solely to 2013), all of Mr. Chang's financial information and any "account information," and then any evidence that the Government could say "show[ed] who used or owed the Device." *See* 2023 SW. Here, the warrant permitted the search and seizure of the phone's entire contents—the epitome of a general warrant.

## V. Suppression and return of the 2018 Cellphone is appropriate because the good-faith exception to the exclusionary rule does not apply.

Suppression of data from the 2018 Cellphone and all fruits thereof is appropriate because the Government's actions have been unreasonable and do not fall within the good-faith exception to the exclusionary rule.[7] "[T]he good faith exception cannot shield even an officer who relies on a duly issued warrant" when (1) "the issuing magistrate has been knowingly misled," (2) "the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable," and (3) "the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015). These limitations apply to deliberate police

---

[7] Under Rule 41 of the Federal Rules of Criminal Procedure, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g) & (h). We respectfully request the return of the 2018 Cellphone.

misconduct and when the Government is "reckless" or "grossly negligent" in seeking or executing a warrant. *Id.*; *see also United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014).

The Fourth Amendment entitles a defendant to a hearing if he makes a "substantial preliminary showing" that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A false statement is "material when 'the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding,'" which is gauged through the "process of subtraction." *See Martin*, 426 F.3d at 73.

Here, as described in detail above, the magistrate judge was knowingly misled by the numerous misleading statements, misstatements, and omissions in the search warrant affidavit. Additionally, the warrant completely lacked any indicia of probable cause that there would be evidence in the place to be searched, rendering reliance on it completely unreasonable. Also as highlighted above, the affidavit did nothing to connect the 2018 Cellphone (the device itself) to any of the alleged illegal activity that occurred in 2013, and several conclusory inferences attempting to do so were factual impossibilities. It did not tie the 2018 Cellphone or Mr. Chang's use of electronic evidence to a single, illegal act purportedly conducted by its user and made no attempt to explain why evidence of a crime would remain on the phone of a former Government official who had quit that role four years earlier. And, as discussed above, the warrant was completely overbroad, seeking all communications from a personal cellphone of any federal crime. Mr. Chang also has established that the search warrant affidavit contained false and misleading information that was necessary to any probable cause finding that was made

with, at the very least, reckless disregard for the truth.  Mr. Chang, thus, respectfully requests a *Franks* hearing.

At bottom, the Supreme Court has repeatedly made clear that "the ultimate touchstone of the Fourth Amendment is 'reasonableness'."  *Riley*, 573 U.S. at 381.  Suppression under these circumstances is the only appropriate remedy to deter this conduct and protect Mr. Chang's Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons, Mr. Chang requests return of his phone and any evidence therefrom be suppressed for all purposes.  Mr. Chang requests further that the Court set this matter for an evidentiary hearing.

Dated: January 19, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

Adam C. Ford
Jamie H. Solano
Anjula Prasad
Arthur Kutoroff
275 Madison Avenue, 24th Floor
New York, New York 10016
*aford@fordobrien.com*
*jsolano@fordobrien.com*
*aprasad@fordobrien.com*
*akutoroff@fordobrien.com*
(212) 858-0040

*Attorneys for Defendant Manuel Chang*

**CERTIFICATE OF SERVICE**

I, Jamie Hoxie Solano, certify that I caused a copy of the foregoing document to be served on opposing counsel of record on the date of filing by submitting the materials through the Court's CM/ECF system, which I know sends a notification and copy of the filing to counsel of record.

*s/ Jamie Hoxie Solano*
Jamie H. Solano