UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       -against-

MANUEL CHANG,

                   Defendant.

**MEMORANDUM & ORDER**
**18-CR-00681 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Defendant Manuel Chang's motion to suppress evidence obtained from the search of his cellphone that was seized during the course of his arrest at an airport in South Africa on December 29, 2018. (*See* Def's. Not. of Mot. to Suppress (Dkts. 491, 532); Mem. in Supp. of Mot. ("Mot.") (Dkt. 533); Reply (Dkt. 544).) The Government opposes Chang's motion in full. (*See generally* Gov't Opp. (Dkt. 540).) For the reasons discussed below, Chang's motion is DENIED.[1]

## I. BACKGROUND

The facts set forth herein are drawn from the indictment (Superseding Indictment (S-2) ("Indictment") (Dkt. 524)[2]), the parties' moving papers (Mot.; Gov't Opp.; Reply), and exhibits attached to the parties' papers, including the warrant and sworn warrant applications. (Ex. 1 to Mot. ("Provisional Arrest Request") (Dkt. 533-1); Ex. 3 to Mot. ("Solano Decl.") (Dkt. 533-3); Ex. A to Solano Decl. ("2023 Adediran Aff.") (Dkt. 533-3) (filed under

---

[1] Included in Chang's motion to suppress is a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g). For the reasons discussed in Section III.D, that motion is also DENIED with leave to renew.

[2] The Government filed its initial indictment on December 19, 2018 (Initial Indictment (Dkt. 1)), a Superseding Indictment (S-1) on August 16, 2019 (Dkt. 137), and a Second Superseding Indictment (S-2) on December 21, 2023 as to Defendant Chang only. (Indictment.) All references and citations are to the operative (S-2) indictment unless otherwise noted.

seal); Ex. B to Solano Decl. ("Search Warrant") (Dkt. 533-3) (filed under seal); Ex. 2 to Gov't Opp. ("2024 Adediran Decl.") (Dkt. 540-2); Ex. 4 to Mot. ("Ford Decl.") (Dkt. 533-4).)[3]

On December 19, 2018, a grand jury returned a sealed, four-count indictment against Manuel Chang ("Defendant" or "Chang"), and several co-defendants, in connection with their alleged "conspir[acy] to defraud investors" by way of fraudulent use of loan proceeds and improper bribes and kickbacks. (*See* Initial Indictment ¶ 24.) The initial indictment charged Chang with three of the four counts: Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count I); Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 (Count II); and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count IV). (*Id.* ¶¶ 94-98, 102-03; *see also* Indictment ¶¶ 56-61.) On December 21, 2018, the Government requested the provisional arrest of Chang by South African authorities in light of the charges against him in the United States. (*See* Provisional Arrest Request.) Chang was then arrested by South African law enforcement eight days later at the O.R. Tambo International Airport in Johannesburg, South Africa. (2023 Adediran Aff. ¶ 4.)

During his arrest, Chang's cellphone was seized from his person. (*Id.*) The cellphone was then transferred to the custody of FBI personnel in South Africa years later, on July 20, 2023, following Chang's extradition to the United States. (*Id.*) On July 23, 2023, FBI personnel flew with the phone to the United States, and, two

---

[3] The parties filed certain submissions under seal because the information contained in the submissions is subject to a Protective Order. (*See* Dkt. 486.) Of note, the search warrant and accompanying affidavit by Special Agent Adediran were filed under seal pursuant to this Order. Some information contained in these documents, however, are available in publicly available filings on the docket and discussions held in open court. Accordingly, the court redacts only those portions not publicly available and subject to the Protective Order.

days later, on July 25, 2023, FBI personnel "FedExed the phone to the case agent for this case, Special Agent Adediran, who received the phone on or about July 27, 2023." (*Id.* ¶ 6; Gov't Opp. at 1.) Over a month later, on August 31, 2023, the Government sought a warrant to search the phone, which then-Magistrate Judge Ramon E. Reyes, Jr.[4] issued the same day. (*See* Search Warrant.)

On September 18, 2023, defense counsel learned that the Government had obtained Chang's cellphone. (Ford Decl. ¶¶ 4-5.) Shortly thereafter, defense counsel filed the instant motion seeking the suppression and return of the cellphone. (*See* Def's. Not. of Mot. to Suppress (Dkt. 491).)[5] In the alternative, the defense asks for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), regarding the validity of evidence used to support the search warrant. (Mot. at 1.) The Government opposes Chang's motion in all respects. (*See generally* Gov't Opp.)

## II.  LEGAL STANDARD

The Fourth Amendment protects persons against "unreasonable searches and seizures" by requiring that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant therefore "may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir.

---

[4] The Honorable Ramon E. Reyes, Jr. has since been elevated to United States District Judge for the Eastern District of New York.

[5] The instant motion was first filed on October 10, 2023. (*See id.*) Thereafter, this court struck the parties' motion papers for failure to comply with the court's Individual Rules. (*See* ECF Order dated January 5, 2024.) Upon refiling, the motion was deemed fully briefed on February 29, 2024. This court heard oral argument on March 25, 2024. (*See* Minute Entry dated March 25, 2024.)

2013) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).[6] Evidence that is seized pursuant to an unreasonable search or derived from such a search must be suppressed unless an exception to the exclusionary rule applies. *James v. Illinois*, 493 U.S. 307, 311-12 (1990).

When a defendant moves to suppress evidence that he contends derives from an illegal search, he "bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).

Moreover, "where a defendant makes a preliminary showing that the government's affidavit misstated or omitted material information," the court must hold a *Franks* hearing "to determine whether the alleged misstatements or omissions in the warrant . . . application were made intentionally or with reckless disregard for the truth and, if so, whether any such misstatements or omissions were material." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). In this Circuit, if a defendant makes the requisite showing, "the ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." *Id.*

## III. DISCUSSION

### A. Seizure of Chang's Cellphone

Chang argues that the seizure of his cellphone by the U.S. Government was unconstitutional because the Government executed a warrantless seizure of his cellphone in July 2023 without probable cause such that suppression is required. (Mot. at 6-7.)

---

[6] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

The court must first begin with a discussion of the initial seizure of Chang's cellphone by South African authorities on December 29, 2018. Under the "international silver platter doctrine," the U.S. can generally receive evidence obtained by foreign authorities with limited Fourth Amendment scrutiny as to how the evidence was initially seized, unless it "shocks the judicial conscience" or where "cooperation with foreign law enforcement officials may implicate constitutional restrictions." *United States v. Lee,* 723 F.3d 134, 139-140 (2d Cir. 2013); *see also United States v. Getto,* 729 F.3d 221, 227-28 (2d Cir. 2013) ("Suppression is generally not required when the evidence at issue is obtained by foreign law officials."). For constitutional requirements to attach based on cooperation, the conduct of foreign law enforcement officials must be such that the foreign officials are rendered "virtual agents" of the United States or where cooperation between the two entities is "designed to evade requirements applicable to American officials." *United States v. Maturo,* 982 F.2d 57, 61 (2d Cir. 1992).

Chang does not identify any particular conduct that he asserts "shocks" the judicial conscience. Accordingly, the court's analysis focuses on whether South African authorities were virtual agents of the United States or cooperation was designed to evade requirements applicable to American officials.

Chang argues that South Africa was a virtual agent of the United States because the U.S. Government "demanded," "directed" or "commanded" South Africa to take his cellphone when South Africa had no independent investigation into Chang. (Mot. at 1, 12; Reply at 1-2; Oral Argument Tr. at 5:22-25, 39:7-20.)[7] However,

---

[7] Chang additionally argues that the Government's provisional arrest request to South Africa was misleading because the Government "told South Africa that seizing Mr. Chang's Phone was consistent with Article 16 of the

this argument conflicts with the record. In the DOJ's request for the provisional arrest of the Defendant, it "request[ed]" Chang's arrest in connection with his extradition to the United States and "the seizure of all articles, instruments . . . in the possession of CHANG at the time of arrest, including electronic devices such as . . . cell phones . . ." (Provisional Arrest Request at 1-2.) "A mere request is not sufficient to show control" even when the request is made pursuant to a treaty. *United States v. Gasperini*, 894 F.3d 482, 489 (2d Cir. 2018); *United States v. Milligan*, No. 20-CR-20134, 2023 WL 4744900, at *3 (E.D. Mich. July 25, 2023) ("[T]o render foreign law enforcement officials virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign parallel investigation . . . . [I]t is not enough that the foreign government undertook its investigation pursuant to an American request"); *United States v. Molina-Chacon*, 627 F. Supp. 1253, 1260 (E.D.N.Y. 1986), *aff'd sub nom. United States v. DiTommaso*, 817 F.2d 201 (2d Cir. 1987) ("[T]he mere fact that a foreign search or seizure is prompted by information from United States officials is not sufficient justification to apply the Fourth Amendment."). That South Africa did not have its own separate investigation into Chang is immaterial. *See Molina-Chacon*, 627 F. Supp. at 1260

---

United States' Treaty, but that was not true." (Reply at 2.) Article 16(1) of the Treaty reads:

> To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all property, including articles and documents, that may be found in the Requested State and that has been acquired as a result of the offence *or is connected thereto or may be required as evidence*, if extradition is granted. (Ex. 6 to Reply ("Treaty") (Dkt. 544-1) at 12) (emphasis added).)

Chang argues that the phone was not "acquired as a result" of the charges he faced but ignores the fact that the phone "may be required" as evidence if he is extradited.

(noting that prior to the United States Drug Enforcement Administration's ("DEA") communication with Bermudian authorities, Bermuda had "no prior knowledge of the investigation" into the defendant).

As Chang has failed to demonstrate that South African authorities were agents of the United States, the cellphone cannot be suppressed on this basis.

In a footnote, Chang attempts to place the blame back on the Government, alleging that the Government has "failed to produce its communications with South Africa reflecting that South Africa did not act as its agent." (Reply at 2 n.2.) Even assuming *arguendo* that this refusal necessarily means that the United States and South Africa were working in tandem to implicate Fourth Amendment protections, the initial seizure of Chang's cellphone would not violate the Constitution because it would be considered a search and seizure incident to a lawful arrest. (*See* Provisional Arrest Request; Arrest Warrant (Dkt. 2) at ECF Nos. 13-14 (issued by Magistrate Judge Steven M. Gold on December 19, 2018).) *See also Molina-Chacon*, 627 F. Supp. at 1261 (finding that Fourth Amendment did not apply to seizure in Bermuda but noting that even if the Fourth Amendment did apply, the seizure would be considered "lawful both as a search incident to a lawful arrest and a valid inventory search") (collecting cases).

Finally, Chang also argues in his Reply that the transfer of the phone from South African authorities to the FBI constitutes an unconstitutional second seizure. But this argument is also without merit. Chang relies on *United States v. Jacobsen*, 466 U.S. 109 (1984), for the proposition that the New York FBI's "manner of execution" after South Africa's seizure constitutes a second unlawful seizure in violation of the Fourth Amendment. *Jacobsen*, however, dealt with a damaged package that was first opened by

private Federal Express ("FedEx") employees, and then exam-
ined by a federal agent without a warrant. *Jacobsen*, 466 U.S. at
111.

Here, South African authorities seized Chang's cellphone upon
his arrest. For four and a half years, South African law enforce-
ment had the phone in safekeeping and there are no allegations
that South African officials searched the phone's contents or oth-
erwise obtained any information from the phone.[8] Thus, when
FBI personnel retrieved the phone in South Africa on July 20,
2023, there was no "affect [in the Defendant's] possessory inter-
ests" because the FBI gained nothing new about the phone that
was not already known to South African authorities. *Cf. id.* at
124-25 (finding a federal field test that destroyed a portion of the
powder within the package affected respondents' possessory in-
terests because the test "converted what had been only a
temporary deprivation of possessory interests into a permanent
one."). Unlike the field test in *Jacobsen*, the transfer of the phone
from South African officials to the FBI here "infringed no legiti-
mate expectation of privacy and hence was not a 'search' within
the meaning of the Fourth Amendment." *Id.* at 120; *see also id.*
at 117 ("The Fourth Amendment is implicated only if the author-
ities use information with respect to which the expectation of
privacy has not already been frustrated.").[9]

---

[8] Because there are no allegations that the South African authorities re-
viewed the contents of the phone, this analysis focuses on the phone's
physical possession. The authority to review the contents of the phone is
reviewed in the following section.

[9] Assuming *arguendo* that there was a deprivation of possessory interests
due in part to the length of the seizure as Chang asserts, the court is re-
quired to assess the reasonableness of that conduct. *See United States v.
Edwards*, No. 21-CR-10012 (JES), 2023 WL 3175420, at *5 (C.D. Ill. May
1, 2023) ("[T]he touchstone of the Fourth Amendment is reasonable-
ness."). And Judge Shadid's analysis in *United States v. Edwards* is
instructive as to why this analysis would not support suppression. There,

**B.    Delay in Obtaining a Warrant to Search
        Chang's Cellphone**

Chang further argues that upon receipt of the cellphone, the Government's month-long delay in obtaining a warrant to search the phone was in violation of the Fourth Amendment and requires suppression. (Mot. 8-13.)

1.    Whether *United States v. Smith* is Applicable

As a preliminary matter, the court reviews why *United States v. Smith* provides the appropriate framework to evaluate Chang's

---

Edwards advanced a similar argument to Chang, asserting that the State of Illinois failed to follow proper procedural rules when transferring seized property to the federal government and therefore that "second seizure" was unlawful and required suppression. *Edwards*, 2023 WL 3175420, at *4. The court rejected the novel argument, finding it to be incompatible with general Fourth Amendment principles. Instead, the court looked to searches in the foreign context and noted that the Fourth Amendment inquiry focused on the initial search and seizure by the sovereign actor to determine if constitutional restrictions applied, "not on the manner in which the government subsequently received the fruits thereof." *Id.* Here, as in *Edwards*, the South African officials transferred the phone obtained by their law enforcement to the FBI in South Africa so that Chang could be prosecuted federally for fraud charges. It was more than reasonable for this transfer to take place in July of 2023 given the arrest and seizure were pursuant to the provisional arrest warrant, and the fact that Chang had finally been extradited to the United States after years of litigation. As this court explained in detail in its Memorandum & Order denying Defendants Allam's and Chang's motions to dismiss on speedy trial grounds, the United States cannot be held responsible for a foreign country's extradition procedures, however long—particularly where the Defendant is found to be aiding in the delay. *United States v. Allam*, No. 18-CR-00681 (NGG), 2023 WL 8828888, at *8-13 (E.D.N.Y. Dec. 21, 2023). Accordingly, any "second seizure" on the part of the FBI passes Fourth Amendment muster, and suppression of said search is denied. This analysis is not to be confused with determining whether—upon receipt of the phone—the delay in obtaining the search warrant was constitutional under *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020). (*See* Section III.B.2.)

delay argument.[10] In *Smith,* the court was presented with the question of whether a 31-day delay in seeking a warrant to search a seized tablet device was unreasonable. *Smith,* 967 F.3d at 202, 204. The *Smith* court considered the following four factors to find that the government's delay in obtaining a search warrant was unreasonable: (1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized items, and (4) the strength of the government's justification for the delay. *Id.* at 204-11. Despite these findings, the *Smith* court declined to suppress the evidence obtained from the tablet because the delay "was an isolated act of negligence" and law enforcement acted in good faith when executing the search. *Id.* at 212. Courts have routinely called upon the *Smith* factors when considering whether there has been an alleged delay in seeking a warrant to search the seized property.

Cellphones implicate privacy concerns far beyond those implicated by the search of other objects that may be seized on an individual's person. *Riley v. California,* 573 U.S. 373, 393 (2014). Therefore "a warrant is generally required before [a search of a cellphone], even when a cell phone is seized incident to arrest." *Id.* at 401. While the Government is correct that *Smith* governs temporary seizures made in anticipation of applying for a warrant (Gov't Opp. at 3), the Government seems to assert that it seized the phone not in anticipation of reviewing its contents, but merely to safeguard the property. Upon a review of the record, however, this argument is untenable. As part of the Government's request to arrest Chang in December 2018, the Government sought the seizure of any instruments, "including

---

[10] Chang urges the court to employ the four-factor balancing test set forth in *United States v. Smith,* 967 F.3d 198 (2d Cir. 2020). The Government contends that *Smith* is inapplicable where there was no Fourth Amendment seizure. (Opp. at 3-4.)

electronic devices such as . . . cell phones" on Chang's person that "may be related to the offense for which extradition is sought." (Provisional Arrest Request at 2.) When doing so, the Government was or should have been on notice that Chang could possess devices that it would want to review in connection with the charges against him. That the Government had an interest in searching these items is supported by the events following Chang's extradition: specifically, the Government did in fact seek a warrant to review the contents of the phone after receiving it from FBI personnel (*see* Search Warrant), and once obtaining the warrant, began to review the phone's contents and filter out privileged information. (*See* Mot. at 7; Ford Decl. ¶¶ 4-5.) Thus, despite the legality of the FBI simply possessing the phone, *see supra*, the ability to examine the phone's contents still required a timely warrant. *Riley*, 573 U.S. at 401; *United States v. Corbett*, No. 20-CR-213 (KAM), 2021 WL 4480626, at *4 (E.D.N.Y. Sept. 30, 2021) (rejecting the government's contention that *Smith* does not apply to seizures incident to arrest and explaining that "even if the officers were properly authorized to *seize* the defendants' phones incident to the defendants' arrests, the officers were obligated to obtain a warrant in order to *search* the phones").

Because there is no evidence that the contents of the phone were known to South African authorities, the clock for delay started to run on July 20, 2023, when the FBI obtained the phone from South African personnel. And it was at that point that the Government should have begun to act diligently in applying for a warrant to search the phone. *See Smith*, 967 F.3d at 202, 205. The court therefore turns to the *Smith* factors to assess whether the Government's 42-day delay in applying for a warrant was unreasonable. [11]

---

[11] During oral argument, the Government argued that *Smith* cannot apply to the facts of this case because it is unlike the line of cases applying *Smith*

### 2.   Reasonableness of Delay Under *Smith*

As mentioned, *Smith* sets forth the following factors to determine whether law enforcement waited an unreasonable amount of time before seeking a search warrant: "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *Smith*, 967 F.3d at 206.

### a.   *Length of the Delay*

A month-long delay between seizure and the application for a search warrant is presumptively unreasonable. *Smith*, 967 F.3d at 207 ("We give independent weight to the length of delay . . . a month-long delay well exceeds what is ordinarily reasonable."). Here, 42 days elapsed between July 20, 2023 (the date FBI obtained control of the cellphone in South Africa), and August 31, 2023 (the date the Government applied for a search warrant).[12]

---

to temporary seizures. (Oral Argument Tr. at 19:12-22.) The court is hesitant, however, to permit the United States Government unfettered access to search the contents of any device merely because it was seized by foreign authorities. Under the circumstances here, the court finds it proper to apply the *Smith* factors where (1) a phone was seized by foreign authorities (not searched), (2) transferred to United States personnel for purposes of the extradition and prosecution of a criminal defendant, and (3) U.S. authorities sought to search the phone's contents. To the extent there is concern as to the Government's purpose in taking the phone, the record establishes that the Government believed evidence of criminality could be on the phone, which served as the basis for obtaining a warrant. This is sufficient to apply *Smith*; the court therefore declines to hold an evidentiary hearing. (*See id.* at 39:21-40:10.)

[12] The court rejects the Government's assertion that the delay should start from when the prosecution team received the phone thereby reducing the delay from 42 days to 35. (*See* Gov't Opp. at 5.) Absent case law suggesting that the delay starts when the prosecution team receives the seized property, given the "heightened consideration" of a personal cellphone, the clock began as soon as the FBI agents "for this case" took the phone from

As such, this delay is presumptively unreasonable and this factor favors suppression. *See, e.g., United States v. Wells*, No. 20-CR-633 (NRB), 2023 WL 2223474, at *3 (S.D.N.Y. Feb. 23, 2023) (finding 29-day delay weighed in favor of the defendant, "but only to a slight degree"); *Smith*, 967 F.3d at 207 (finding 31-day delay weighed "substantially" in favor of the defendant); *In re Application for Search Warrant*, 527 F. Supp. 3d 179, 181, 184 (D. Conn. 2020) (finding 51-day delay weighs "strongly against" issuance of the search warrant and in favor of the defendant).

### b. *Importance of the Seized Property*

The second *Smith* factor considers the importance of the seized property to the owner and the "nature of the property seized." *Smith*, 967 F.3d at 207. The property here, Chang's cellphone, implicates "special concerns" due to the sheer volume of personal data saved on such devices. *Id.* at 207-08; *Corbett*, 2021 WL 4480626, at *5. Defendant asserts that his cellphone contains "personal communications and several aspects of his personal life" and that he has "repeatedly demanded" the return of his cellphone. (Mot. at 10-11; Ex. 7 to Reply ("Chang Decl.") (Dkt. 544-2) (filed under seal) ¶¶ 4-5.)[13]

Evaluating the significance of seized property additionally calls for this court to consider "whether defendant[] requested the property be returned or could have retained the seized property." *Corbett*, 2021 WL 4480626, at *5. Here, there is no dispute that

---

South African authorities. *See, e.g., United States v. Eisenberg*, No. 23-CR-10 (AS), 2023 WL 8715724, at *7 (S.D.N.Y. Dec. 18, 2023) (rejecting government's argument that delay began when devices reached New York and instead finding delay started when devices were seized by FBI agents in Puerto Rico because "delay is delay, and the effect on the *target* is the same, whatever or whoever causes that delay.").

[13] Chang's Declaration was also filed under seal. The court references quotations from the parties briefing, rather than the declaration itself, such that redaction is not warranted.

Chang has continued to request the return of his property. However, Chang only sought return of the phone *after* it was in the U.S. Government's possession. (Gov't Opp. at 6-7.) There is no evidence that Chang even attempted to request the return of his phone from South African authorities despite knowing that the phone was in their possession for over four years.[14]

Further, the gravamen of this factor is on Chang's ability to retain the cellphone. "[C]ontinued inability to possess or use the cell phones while incarcerated significantly diminishe[s] the importance of their prompt return." *Corbett*, 2021 WL 4480626, at *5. Chang has been unable to access his phone while in custody and would continue to be unable to use this phone while he remains in custody pending trial. (*See* 2023 Adediran Aff. ¶ 4.) Chang's privacy interests are therefore outweighed by his current incarceration and inability to use the phone. *See United States v. Adams*, No. 1:20-CR-12 (MJR), 2021 WL 10265208, at *13 (W.D.N.Y. Aug. 16, 2021), *report and recommendation adopted*, No. 20-CR-12 (LJV), 2023 WL 2142148 (W.D.N.Y. Feb. 21, 2023) (collecting cases).

---

[14] Chang argues any effort to "convince the South African government to disregard" the Treaty obligations and return his cellphone would have been futile. (Reply at 3 n.3.) Even if true, the court only slightly considers the Defendant's failure to demand return of the property for over four and a half years. Chang further argues that the Government was delayed in providing him with a copy of the search warrant and receipt by almost two months. (Mot. at 5.) The court is unaware of any requirement under Rule 41 that mandates when a copy of the warrant and receipt are to be given to the aggrieved person. *See United States v. Scully*, 108 F. Supp. 3d 59, 83 (E.D.N.Y. 2015) (noting that while "Rule 41 *allows* the copy of the warrant and the receipt to be given to the person from whose premises the property at issue was seized" there is no "separate requirement that the officer provide the warrant, a receipt, or any other form of notice to the owner of the property") (emphasis added). In any event, the court would deem such a purported failure as a "ministerial violation" that does not require suppression. *Id.* at 84.

In sum, although there is generally a special interest in cell-phones that would weigh in Defendant's favor, this is substantially reduced in Chang's case such that it does not support suppression. The second factor accordingly weighs in the Government's favor. [15]

     *c.   Reduced Property Interest in the Seized Item*

Under the third factor, courts consider whether the defendant had a reduced property interest in the seized item. *Smith*, 967 F.3d at 208. There are several elements that encompass the strength of this property interest, "including the inherent criminality of the seized item, whether the defendant willingly relinquished the property to the state or otherwise consented to search or seizure, the independent evidentiary value of the item, and the police's level of suspicion, meaning probable cause or reasonable suspicion, in seizing the item." *Tisdol*, 544 F. Supp. 3d at 226-27. Importantly, "[t]he fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely." *Riley*, 573 U.S. at 392.

---

[15] The court notes that in many cases analyzing this factor, the defendant has not sought return of the seized property in any capacity which courts have held strongly weigh in favor of the government. *See, e.g., United States v. Green*, No. 18-CR-121 (MJR), 2021 WL 1877236, at *6 (W.D.N.Y. Feb. 3, 2021), *report and recommendation adopted*, No. 18-CR-121 (RJA), 2021 WL 1856949 (W.D.N.Y. May 10, 2021); *In re Application for Search Warrant*, 527 F. Supp. at 185; *see also United States v. Tisdol*, 544 F. Supp. 3d 219, 226 n.4 (D. Conn. 2021) (noting that defendant did not ask for his device but finding "this carries less weight because he was incarcerated and could not have it"). Here, Chang did ultimately seek the return of the property immediately after learning that the Government obtained a warrant to search its contents, and thus the court cannot determine that this factor weighs *strongly* in favor of the Government. Instead, the court clarifies that Chang's incarceration tips this factor in favor of the Government.

A cellphone is not inherently criminal. And the Defendant did not "willingly" relinquish his cellphone or consent to its seizure by authorities. [REDACTED]

Chang nevertheless has a reduced property interest in his phone because: it was seized by South African law enforcement and lawfully obtained by the U.S. Government, *see supra* III.A; *see also Corbett,* 2021 WL 4480626, at *6; *United States v. Daskal,* No. 21-CR-110 (NGG), 2023 WL 9423950, at *9 (E.D.N.Y. June 9, 2023) [16]; and, as discussed *infra,* there was probable cause at the time of Chang's arrest to believe his phone had incriminating evidence of a conspiracy to commit fraud. (*See* 2023 Adediran Aff. ¶¶ 7, 10, 65-66.) *See also Corbett,* 2021 WL 4480626 at *6. And as this court has previously held, the Defendant's property interest is further reduced where, as here, "probable cause has been established through a warrant application." *See Daskal,* 2023 WL 9423950, at *9; *see also In re Application,* 527 F. Supp. 3d at 187 ("[I]t matters that the underlying basis for the search was established by a sworn affidavit and accepted by a Superior Court Judge at the time of the seizure."); *Wells,* 2023 WL 2223474, at *5 (finding defendant had a reduced property interest where he "had been the subject of an ongoing investigation into criminal activity that involved [defendant] exchanging text messages and phone calls in furtherance of that illegal conduct.").[17]

---

[16] Though Chang's cellphone was subject to the international platter doctrine such that the Fourth Amendment did not apply, this does not change the court's analysis with respect to the Defendant's reduced property interest in the seized item. Thus, while *Corbett* and *Daskal* pertain to search and seizures incident to lawful arrests, the findings in both cases are of relevance to the property interest at issue here. Additionally, as recognized by the court in *United States v. Tisdol,* the confiscation of a phone as part of an ongoing criminal investigation by the U.S. Government may reduce that interest further. 544 F. Supp. 3d at 227.

[17] To be clear, the court makes no determination as to whether probable cause at the time of the search warrant's execution was sufficient. The

Taken together, Defendant's property interest in the phone was reduced and this factor weighs in favor of the Government.

#### d. Justification for the Delay

The fourth and last *Smith* factor requires the court to consider the Government's justification for the delay. *Smith*, 967 F.3d at 210. In *Smith*, this factor weighed in favor of the defendant because law enforcement "was not diligent in seeking a warrant to search [the defendant's] tablet, and there were no overriding circumstances to justify a month-long delay." *Id.* at 210-11. Because the government in *Smith* failed to investigate the case during the period between the seizure and the application for a warrant, this factor weighed in favor of suppression. *Id.*

Here, unlike *Smith*, the Government provides the following justifications for the delay: (1) its investigation into the case was ongoing during the delay, and (2) Special Agent Adediran was newly assigned and needed time to learn the facts of the case. (Gov't Opp. at 8-9 (citing 2024 Adediran Decl.).) Further, Agent Adediran testified to the specific steps he was taking during the 42-day delay as part of the investigation. (2024 Adediran Decl. ¶¶ 6-8.) After the FBI obtained the cellphone on July 20, 2023, Agent Adediran almost immediately began planning a trip to the United Kingdom, but the trip did not occur until August 13, 2023 because of "numerous approvals both within the FBI and from foreign law enforcement authorities." (*Id.*) While in the United Kingdom, Agent Adediran "participated in multiple interviews" concerning this case, and specifically "Chang and his use of phones and emails." (*Id.* ¶¶ 7-8.)

---

court reserves that analysis for Section III.C where Chang separately calls into question the validity of the search warrant and accompanying evidence before Judge Reyes at that time.

These two justifications, in addition to the fact that multiple agencies were involved in the investigation and seizure of the device at issue, provide a reasonable justification for the delay such that this factor weighs in favor of the Government. *See Wells*, 2023 WL 2223474 at *6-7; *see also Corbett*, 2021 WL 4480626, at *6 (finding fourth factor weighed in favor of government where it provided a "reasonable explanation that the investigation of the alleged enterprise and its associates and members was continuing as justification for the delay").[18] *Cf. Tisdol*, 544 F. Supp. 3d at 227 (fourth factor weighed in favor of defendant where government provided "no explanation for the delay"); *In re Application for Search Warrant*, 2020 WL 6875048, at *7 (fourth factor weighed in favor of defendant where government offered "no particular justification for the delay").

Chang argues that the Government has presented conflicting statements. Specifically, Defendant notes that while the Government and Agent Adediran submit that investigation into the case was ongoing during the delay for purposes of the instant motion, they submitted to South Africa in April 2019 that the "investigation is complete" with respect to Chang. (*Compare* 2024 Adediran Decl. ¶¶ 7-8, *with* April 2019 Supp. Letter to South Africa Regarding Chang Extradition (Dkt. 533-2) at 2.) Notably, however, the Government's representation to South Africa that the investigation into Chang was complete was made in 2019, before any trial for Chang's co-defendants and before Chang's

---

[18] Judge Buchwald's analysis in *United States v. Wells* is particularly instructive here. 2023 WL 2223474, at *6. In *Wells*, the government provided similar reasons for its delay, explaining that (1) it was "continuing to actively investigate the case against Wells during the entire relevant period," (2) a new case agent joined the case near the time of one of the seizures, requiring additional time for the agent to "learn about the case," and (3) there were several agencies involved the investigation and seizure of the devices at issue. *Id.* at *6-7. The court ruled that the fourth factor weighed in favor of the government and this court adopts a similar finding here.

long overdue extradition to the United States. While the investigation may have been deemed complete as of April 2019, it can hardly be said that no new facts or additional reasons to re-open the investigation did not occur during the almost *five* years between that letter and this current motion. In a supplemental declaration, Agent Adediran supports this point, submitting that he was assigned to this case on March 16, 2023 and at the time, "the case was largely dormant because defendant Jean Boustani had been acquitted, Chang was still in extended extradition proceedings, and no other defendants were in the United States or extradition proceedings." (2024 Adediran Decl. ¶ 3.)[19] Furthermore, the investigation was deemed complete *prior* to the Government having Chang's phone. Defendant has not pointed to any evidence or case law that forecloses a re-opening of a once "complete" investigation.

Having found the Government's reasons for the delay sufficient, the court concludes that this factor weighs in favor of the Government.

####    e.    *Balancing the Factors*

In sum, the court finds the first factor, length of the delay, weighs in favor of the Defendant. The second, third, and fourth factors all weigh in favor of the Government. On balance, the 42-day delay, while presumptively unreasonable, does not amount to a Fourth Amendment violation in light of the other three factors weighing in favor of the Government. *See Corbett*, 2021 WL 4480626, at *7 (finding no unconstitutional delay where only the first of the four *Smith* factors weighed in favor of the defendant). Accordingly, because there was no unconstitutional delay, the

---

[19] Co-defendant, Jean Boustani, was tried before the Honorable William F. Kuntz in late 2019 and was acquitted of all charges on December 2, 2019. (*See* Judgment as to Boustani (Dkt. 371).)

court denies Defendant's motion to suppress all evidence obtained from the phone.

### 3. Exclusionary Rule (Good Faith Exception)

Even assuming the delay violated the Fourth Amendment, said violation requires exclusion only when "police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Smith*, 967 F.3d at 211. Accordingly, in *Smith*, despite finding the delay unconstitutional, the Second Circuit did not exclude the evidence because there was no indication that the officer in question acted with deliberate indifference to the defendant's constitutional rights. *Id.* at 212. Nor did the defense allege any "strategic advantage" afforded to the police as a result of the delay. *Id.* at 211-12.

Here, nothing in the record indicates that the delay in obtaining the search warrant was deliberate, reckless or grossly negligent, was the result of systemic or recurring negligence, or that it gave the Government a strategic advantage. Therefore, there is no "appreciable deterrent value" gained by suppressing the evidence obtained from the phone, even if a Fourth Amendment violation occurred. *See United States v. Payne*, No. 19-CR-170 (MJR), 2021 WL 9978612, at *15-16 (W.D.N.Y. Dec. 29, 2021), *report and recommendation adopted sub nom. United States v. Hay*, No. 19-CR-170 (RJA), 2023 WL 142119 (W.D.N.Y. Jan. 10, 2023); *see also United States v. Berroa*, No. 19-CR-10164 (ADB), 2021 WL 149254, at *7 (D. Mass. Jan. 15, 2021) (declining to suppress evidence despite a 15-month delay where there was "nothing in the record to suggest bad faith or anything beyond an instance of isolated negligence"). Even if this court found that the delay violated Chang's Fourth Amendment rights under *Smith*, the good faith exception would apply and bar suppression.

For the foregoing reasons, Chang's motion to suppress based on delay is DENIED.

### C.   Validity of Search Warrant

Chang separately argues that suppression is warranted because the search warrant lacked sufficient allegations to establish probable cause that the cellphone contained evidence of criminal activity. (Mot. at 13.) Chang also argues that there were material omissions in the warrant application entitling him to suppression or, alternatively, a *Franks* hearing. (*Id.* at 1, 13, 24-25.) He further argues that the warrant was overbroad, even assuming there was probable cause. (*Id.* at 21.) The court addresses each argument in turn.

#### 1.   Probable Cause

"[T]he Fourth Amendment provides that a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013). "[P]robable cause to search is demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007). "This required nexus between the items sought and the 'particular place' to be searched protects against the issuance of general warrants." *United States v. Clark,* 638 F.3d 89, 94 (2d Cir. 2011). "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. Thus, "[w]hen examining a warrant, [a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *United States v. Nelson*, 828 F. App'x 804, 806 (2d Cir. 2020) (Summary Order). The court need only ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

Chang asserts that (1) there was not a sufficient nexus between the evidence sought and the alleged criminal activity by Chang;

and (2) the allegations pertaining to Chang were stale. (Mot. at 13-14.)

In support of the Government's application for the warrant, Agent Adediran submitted an affidavit that provided four principal justifications for why there was probable cause to search Chang's cellphone: (1) bank records showing [REDACTED] payments being made to an account for "Thyse International" allegedly controlled by Chang, which may have been accessed via his cellphone (2023 Adediran Aff. ¶¶ 58, 66); (2) text messages from former co-defendant Boustani to Chang [REDACTED] in 2016 [REDACTED] (*id.* ¶ 65); (3) testimony [REDACTED] alleging that Chang called Boustani [REDACTED] (*id.* ¶¶ 43, 65); and (4) based upon the special agent's training and experience, the cellphone is likely to contain other communications or records concerning the scheme, or Chang's access to accounts or internet websites in furtherance of the scheme. (*Id.* ¶ 66.)[20]

In reviewing whether this shows probable cause, the court first notes that the charged crimes all involve conspiracy, so "communications with alleged co-conspirators, and evidence regarding such communications, is directly relevant." *United States v. Weigand*, 482 F. Supp. 3d 224, 241 (S.D.N.Y. 2020). The affidavit discusses bribery payments in furtherance of the alleged conspiracy. (2023 Adediran Aff. ¶ 58.) It also discusses how in 2016, Boustani sent a text message to the Defendant [REDACTED]. (*Id.* ¶ 65.) However, the affidavit does not clearly link the communications discussing criminality to Chang's cellphone or otherwise allege that the text messages were in fact discussing

---

[20] The Government additionally submits that the Adediran Affidavit shows that Chang engaged in a "long-running scheme to defraud investors and launder bribe proceeds;" and that other co-conspirators communicated electronically about the scheme, including to "discuss payments to the defendant" allowing for a "common-sense conclusion" that there was a "fair probability that evidence would be found on the phone." (Gov't Opp. at 18.)

criminal activity. While true, evidence of communications be-
tween co-conspirators—however innocent—is relevant because
it "demonstrates the relationship of trust between the co-con-
spirators . . . and the development of that relationship." *United
States v. Christie*, No. 08-CR-1244 (RSW), 2010 WL 286617, at
*1 (S.D.N.Y. Jan. 14, 2010).[21]

Under the circumstances here, a seemingly innocent text sent
from one co-conspirator to Chang [REDACTED][22] could indicate
with fair probability that more incriminating evidence could be
found on Chang's phone.

Additionally, Chang places much emphasis on the amount of
time that has passed since the alleged conduct, noting that the
loan guarantees were signed in 2013 while the phone was man-
ufactured in 2014 and seized in 2018. (Mot. at 15-16.) Yet,
Chang ignores that text messages were purportedly exchanged
in 2016, potentially with the phone at issue. In a multi-year con-
spiracy, it is therefore reasonable to infer that Chang and his
fellow co-conspirators would have communicated throughout
this time period. *See United States v. Rosenfeld*, No. 23-CR-65
(CM), 2023 WL 8471947, at *10 (S.D.N.Y. Dec. 7, 2023) (finding
probable cause where there was evidence defendant communi-
cated with charged co-conspirator in the two years after alleged
crimes occurred); *United States v. Estime*, No. 19-CR-711 (NSR),
2020 WL 6075554, at *18 (S.D.N.Y. Oct. 14, 2020) (noting that

---

[21] The court in *Christie* was in a different posture than the case at bar. In
*Christie*, the court considered whether evidence of prior criminal activity
could be admitted at trial and whether that evidence was unduly prejudi-
cial to the defendants. *Id.* The court ruled that the evidence was admissible
under Federal Rule of Evidence 404(b) to show the existence, nature, and
development of criminal relationships among the co-conspirators. *Id.*
While this case is not yet at the trial stage, the court nevertheless finds the
discussion of admissible evidence in a conspiracy case relevant.

[22] [REDACTED]

"courts have found probable cause to support the search of a cell-phone seized incident to an arrest even where the search warrant application did not introduce into evidence *any* specific communications sent from, or received by, the seized phone.").

Similarly, Chang asserts there could not possibly be probable cause linking his cellphone to criminal conduct that occurred in 2013 when the cellphone seized from his person in 2018 was not manufactured until May 2014. (Mot. at 17-18.) However, Chang offers no support for the assertion that the Government "must show that [this] very device[]" was used "for conspiratorial communications" in order to justify searching it. *Weigand*, 482 F. Supp. 3d at 241 (S.D.N.Y. 2020) (emphasis in original). Indeed, "[i]f at one time during a criminal conspiracy, a suspect possessed records relating to that conspiracy, such records would likely be retained for the duration of the conspiracy." *United States v. Guzman*, No. 97-CR-786 (SAS), 1998 WL 61850, at *5 (S.D.N.Y. Feb. 13, 1998). And it is reasonable to infer that Chang could have transferred incriminating information to his new phone even if not explicitly alleged in the affidavit. (*Cf.* Reply at 7 n.8); *see also United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience.").

Finally, contrary to the Defendant's argument, this is not a case where Judge Reyes was solely relying on "the self-avowed expertise of a law-enforcement agent." (Mot. at 20 (citing *Guzman*, 1998 WL 61850, at *4).) Agent Adediran stated that based on his training and experience, "people often use cellular telephones, not only to communicate with others about bribery schemes, but also to access internet websites in furtherance of the scheme." (2023 Adediran Aff. ¶ 66.) This is a fairly generic statement that would seem to support a showing of probable cause to anyone accused of engaging in a bribery scheme. But

this statement is supported by (1) testimony [REDACTED] regarding co-conspirator calls to Chang, and (2) evidence of emails discussing bribery payments to Chang and others. Courts in this district have found probable cause with similar support, based on, "among other evidence," an agent's expert opinion that "individuals who engage in wire fraud, bank fraud and money laundering activities commonly use phones, computers, or other electronic devices to access websites used for illegal activity, [and] to communicate with victims and co-conspirators online[.]" *United States v. Watson*, No. 23-CR-82 (EK), 2023 WL 7300618, at *4 (E.D.N.Y. Nov. 6, 2023). When taken together, the court finds that the evidence and facts presented in Agent Adediran's 30-page affidavit established a fair probability that evidence of the crimes at issue would be found on the Defendant's phone.

### 2.   Material Omissions

Chang also moves for a *Franks* hearing based on alleged material misrepresentations and/or omissions in the Adediran affidavit. (*See* Mot. at 1, 13, 24-25.) In *Franks*, the Supreme Court held that although warrant affidavits are presumptively valid, a defendant may challenge the truthfulness of facts in the affidavit by seeking an evidentiary hearing. 438 U.S. at 155-56, 171. "[T]he burden to obtain such a hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Yu*, No. 22-CR-208 (CBA), 2023 WL 4687970, at *13 (E.D.N.Y. July 21, 2023). A hearing is warranted, however, where a defendant shows that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding." *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *7 (S.D.N.Y. Mar. 20, 2023).

Chang makes several claims of material omissions or misstatements in the Adediran affidavit.

First, the Defendant claims that the Government "failed to tell the magistrate judge that Mr. Chang left his position as the Minister of Finance of Mozambique in 2014." (Mot. at 2, 15, 21.) However, this statement is not material to a finding of probable cause that evidence for the charged crimes existed on Chang's cellphone. Even inserting this omission into the affidavit, the payments were alleged to have ended in 2014, so the fact that Chang left his position at the end of 2014 was not reasonably necessary to find probable cause. (2023 Adediran Aff. ¶ 21.) And, as discussed *supra*, Chang's phone may still have been used to communicate with co-conspirators or retained documents relevant to the conspiracy even after his position ended.

Second, the Defendant argues that the affidavit misled the magistrate judge by stating that his cellphone "'might have' been present at certain meetings" and "used to divert loan proceeds to himself in 2013" when that was a "factually impossibility" since the seized phone was not available for purchase until May 2014. (Mot. at 2, 18.) As this court noted, there is no requirement that the seized cellphone must be the phone used for the alleged crimes when it may retain evidence relevant to the crimes given the ability to store extensive data that can then be transferred to other devices. *See Riley*, 573 U.S. at 393-94. Furthermore, Chang fails to provide any evidence that can substantially show that there was an intent to mislead or a reckless disregard of the truth by Agent Adediran's failure to disclose the production date of the phone. Chang also does not demonstrate that the production date of the phone would materially alter the magistrate's probable cause ruling because Adediran's affidavit alleged that the

conspiracy took place until the end of 2014. (2023 Adediran Aff. ¶ 21, 25-28, 59-62.)[23]

Third, the Defendant claims that the Government failed to tell the magistrate judge that Boustani "repeatedly testified under oath that he and Mr. Chang never engaged in any fraud." (Mot. at 2-3, 18.) However, the defense has not provided any evidence that disclosing Boustani's testimony would have been "critical" in a probable cause determination, especially considering Agent Adediran's disclosure of Boustani's acquittal. (2023 Adediran Aff. ¶ 10 n.2.) Judge Reyes surely understood that Boustani's acquittal encompassed a not guilty plea and Boustani's rejection that he engaged in fraud.

Fourth, in his Reply, Defendant claims that the affidavit misled the magistrate in stating that Chang's co-conspirators sent bribes and kickbacks "to a bank account in the name of a company controlled by Mr. Chang, which was an account for 'Thyse International.'" (Reply at 6-7.) Chang submits evidence showing that the account is controlled by someone other than Chang, and the Government has since clarified that "records obtained subsequent to the obtaining of the warrant" show that the account was under the name of an associate of Chang's. (*See* Ex. 8 to Reply

---

[23] Chang emphasizes that the phone was released "several months after the purported travel and conversations" alleged in the affidavit to suggest that there is no probable cause to believe the phone would have evidence "of these events occurring." (Mot. at 17-18.) Even if inserted and considered, this would not change the determination where the affidavit alleges that the general conspiracy continued until the end of 2014, in pertinent part, because Chang purportedly signed a loan in May 2014. (2023 Adediran Aff. ¶ 59.) It is certainly reasonable to infer that evidence of this loan or other documentation could have been stored in the phone's files. Moreover, the Government concedes the additional misstatement that Chang received payments in October 2014 (rather than in October 2013). (*See* Gov't Opp. at 16 n.8.) But again, even if this statement were omitted, this would not change the calculus given the length of the alleged conspiracy.

(Dkt. 544-3) (filed under seal); Gov't Opp. at 14 n.7.) The Government cannot intentionally mislead the magistrate. However, because there was evidence from co-conspirators detailing various payments to Chang, including from Boustani explicitly discussing the Thyse account, it was more than reasonable for the special agent to infer that the account was controlled by Chang. *See United States v. Reyes*, No. 06-CR-120 (SRU), 2007 WL 419636, at *5 (D. Conn. Jan. 30, 2007) ("Near certainty of the object's criminal character, however, is not necessary.").

To be sure, this was not a clear-cut case. The court acknowledges that the special agent could have included more detail when describing the conduct specific to Chang, particularly in light of the heightened privacy concerns cellphones implicate. The court also notes the mistakes in dates and inferences made in the supporting affidavit. However, even if the Government was not as diligent and careful as it could have been in establishing probable cause, Chang still does not meet the "substantial preliminary showing" required to invalidate the presumption in favor of the magistrate's ruling. *Guzman*, 1998 WL 61850, at *6.[24] The court therefore declines to order a *Franks* hearing.

### 3.  Overbreadth and Particularity

Chang also argues that even assuming there was probable cause to issue the warrant, it was nevertheless overbroad. (Mot. at 21.) "Breadth and particularity are related but distinct concepts." *United States v. Frey*, No. 19-CR-537 (DRH), 2022 WL 1284318, at *3 (E.D.N.Y. Apr. 29, 2022). "A warrant is overbroad if its description of the objects to be seized is broader than can be justified by the probable cause upon which the warrant is based." *Yu*, 2023 WL 4687970, at *10. Particularity, on the other hand,

---

[24] Moreover, even if the search warrant affidavit failed to establish probable cause, the good faith exception would remedy such a violation. *United States v. Ray*, 541 F. Supp. 3d 355, 404 (S.D.N.Y. 2021).

"requires a warrant to particularly describe the place to be searched, and the persons or things to be seized." *Id.* To satisfy the particularity requirement under the Fourth Amendment, a warrant must meet the following criteria: "(1) it must identify the specific offense for which the police have established probable cause; (2) it must describe the place to be searched; and (3) it must specify the items to be seized by their relation to designated crimes." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020). For the third requirement, a "warrant would only be overbroad if it permitted a search for evidence unrelated to that crime." *United States v. Pugh*, No. 15-CR-00116 (NGG), 2015 WL 9450598, at *21 (E.D.N.Y. Dec. 21, 2015).

The warrant in this case meets the first two particularity requirements. The warrant listed the three counts that Chang has been charged with, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371, and Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h) as crimes for which there was probable cause to investigate. (Search Warrant at 3.) And it specified the cellphone to be searched [REDACTED]. (*Id.* at 2.)

The warrant authorized the search of specific materials on Chang's phone that "relate to violations" of the specified charges. (*Id.* at 3.) This list was expansive, covering categories of digital information, including any: (1) contents of all incoming and outgoing communications from March 1, 2011 to "the present"; (2) evidence concerning the location and identity of suspects and co-conspirators, (3) information including names, addresses, phone numbers, bank accounts and other information related to the "use, concealment or diversion of funds related to any project in Mozambique"; (4) any information recording Chang's schedule

or travel; (5) and all available financial records. (*Id.*)[25] The warrant satisfies the third requirement because it denotes that each of the five listed types of records and information must "relate to violations" of the three listed offenses. *See Frey*, 2022 WL 1284318, at *4 (finding an electronic device warrant "particularized in that its incorporated attachments . . . identify [defendant's] offenses . . . [and] list[s] seven types of 'records and information,' each of which must be related to 'sex workers and victims' or the 'subject offenses.'").

While there may be broad language within the list of data to be searched, that does not render a warrant "insufficiently particularized." *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990) ("[A]llowing some latitude [regarding the warrant's description of the category of items to be seized] simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked "drug records."). The Defendant cites to *Galpin* for the proposition that categories using terms like "any" or "any and all" in that case were found overbroad. *See* 720 F.3d at 446-47, 449-50. However, the Second Circuit has since held that using broad language in reference to phone data like "any" or "any and all" does not violate particularity if that language is within the listed types of files enumerated in the warrant. *See United States v. Romain*, 678 F. App'x 23, 26 (2d Cir. 2017) (Summary Order) ("*Galpin* does not hold that the use of the phrase 'any and all' in a warrant is impermissible. In *Galpin*, we observed that the items listed in the warrant were wholly unrelated to the only offense that law enforcement had probable cause to believe the defendant had committed . . . ."). Here, despite language like "any" being used in the list of data to be

---

[25] The court finds that it need not redact the generalized list of items to be searched in the warrant where there is no confidential information disclosed in the list itself.

searched, the warrant still described the sought-after items with sufficient particularity.

The defense claims that without references to the charged crimes within the categories of digital evidence listed in the search warrant, the search can be extended to "*any U.S. federal crime.*" (Mot. at 23.) However, courts in this Circuit have found that "particularity does not require that each category of digital information authorized for search refers to the crimes under investigation." *Daskal*, 2023 WL 9423950, at *6; *see e.g., United States v. Alston*, No. 15-CR-435 (CM), 2016 WL 2609521, at *4 (S.D.N.Y. Apr. 29, 2016) (explaining that "a warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement"); *United States v. Saipov*, No. 17-CR-722 (VSB), 2019 WL 3024598, at *7 (S.D.N.Y. July 11, 2019) (finding a warrant to be particular where enumerated categories of digital data do not include specific references to the charged crime); *United States v. Nejad*, 436 F. Supp. 3d 707, 727 (S.D.N.Y. 2020) (finding that when the first page of a warrant described the suspected crimes, failure to recite the crimes in the paragraphs authorizing seizure does "not render them lacking in particularity"); *Pugh*, 2015 WL 9450598, at *21-22 (finding a warrant particularized and not overbroad where it specified the crime for which the evidence was being searched and contained a list of evidence to be searched from the phone.).

Finally, Chang claims that the warrant was temporally overbroad because it authorized any evidence from 2011 through 2018 to be searched for travel information, while the alleged travel referenced in the Adediran affidavit took place in 2013. (Mot. at 23.) However, the "warrant's broad time frame does not render the warrant overbroad." *United States v. Brown*, 627 F. Supp. 3d 206, 229 (E.D.N.Y. 2022) (finding that a search going back three years before the indictment was not overbroad because the conspiracy

was believed to have started in 2013). Similar to *Brown*, the Adediran affidavit here asserts that the negotiations between Privinvest and Mozambique started in 2011; accordingly, it is reasonable that the warrant would go back to 2011. (2023 Adediran Aff. ¶¶ 25-26.)

The search warrant was therefore particularized and not overbroad.

### 4.   Exclusionary Rule (Good Faith Exception)

Even if there was a defect in Judge Reyes's probable cause determination or the warrant was overbroad, suppression would not be an available remedy under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 (1984). "Under the 'good faith exception,' the exclusionary rule and its remedy of suppression does not apply where evidence is obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Disla Ramos*, No. 22-CR-431 (IJL), 2022 WL 17830637, at *11 (S.D.N.Y. Dec. 21, 2022). Generally, searches pursuant to a warrant will "rarely require any deep inquiry into reasonableness" because a "warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.*

Thus, under the good faith exception, when reviewing a search warrant issued by a magistrate judge, the court will only exclude evidence in four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992). Chang argues that the first, third and fourth circumstances apply here.

However, for the reasons already discussed, these circumstances do not apply. Judge Reyes was not knowingly misled, the warrant was sufficient to establish probable cause even considering the alleged misstatements and omissions, and the court declines to find that the warrant was "so facially deficient" to render reliance upon it unreasonable. The affidavit was far from "bare bones," including testimony, evidence, and the agent's expert opinion, such that any reasonable officer would be permitted to rely upon the magistrate's determination. *Moore*, 968 F.2d at 222. Ultimately, even if there was insufficient probable cause, the good faith exception would apply here.

Accordingly, the court finds that Chang's motion to suppress evidence obtained pursuant to the search warrant is DENIED.

### D.  Return of Property Under Rule 41(g)

Finally, Chang seeks the return of his cellphone given that the Government has extracted the phone and produced a copy of the extraction to the defense. (*See* Mot. at 23 n.7; Ford Decl. ¶¶ 7-8.)

Under Rule 41 of the Federal Rules of Criminal Procedure, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "Such relief is warranted only if the moving party can demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Handler*, No. 23-CR-4 (JHR), 2023 WL 2584217, at *2 (S.D.N.Y. Mar. 21, 2023). The party seeking return of the seized items bears the burden of proving these elements by a preponderance of the evidence. *Id.*

The parties do not meaningfully advance arguments for or against the return of the property at issue. While it appears that a full extraction has occurred (*see* Oral Argument Tr. at 7:7-10),

the court has found that the initial seizure of the phone was lawful. *See supra* III.A. As the Defendant has not met his burden showing that the cellphone should be returned to his counsel, the court denies Defendant's request to return his property at this time. *United States v. King*, No. 21-CR-255 (NSR), 2022 WL 875383, at *5 (S.D.N.Y. Mar. 24, 2022).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress and his motion for return of property are DENIED in their entirety.

SO ORDERED.

Dated:   Brooklyn, New York
         March 27, 2024

s/NICHOLAS G. GARAUFIS
NICHOLAS G. GARAUFIS
United States District Judge