

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

HDM/GN/PC/MC
F. #2016R00695

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 13, 2024

By ECF and E-Mail

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Manuel Chang
Criminal Docket No. 18-681 (S-3) (NGG)

Dear Judge Garaufis:

The government respectfully submits this response to the defendant's eleventh-hour filing in advance of the status conference scheduled for today, June 13, 2024. See ECF No. 586 ("Def. Mot.") (filed June 12, 2024). The defendant raises four issues, two of which have been previously raised and litigated. None of these issues have any merit.

**I. The Court Should Once Again Deny the Defendant's Motion to Compel Documents from the U.K. Proceeding as Moot**

The defendant reiterates his May 21, 2024, motion to compel, which the Court has already denied as moot. See ECF Nos. 569 (Def. Mot. to Compel) & 573, n.1 (order denying motion as moot). Once again, the defendant requests that the government seek out documents from the U.K. Proceeding that it does not possess. (Compare Def. Mot. to Compel at 3-5 with Def. Mot. at 1-2.) Notably, the defendant does not cite a single case or authority in support of his renewed motion. That is because, as the government made clear in its opposition to the motion to compel, see ECF No. 570, it is well-settled law that "[a] prosecutor is not constitutionally obligated to obtain information dehors his files for the purpose of discovering information which defense counsel can use in impeaching the credibility of a prosecution witness." Morgan v. Salamack, 735 F.2d 354, 358 (2d Cir. 1984). Instead, the government is obligated to produce information that it possesses at the time of trial. Id. (citing United States v. Agurs, 427 U.S. 97 (1976)). "Brady does not require the government to search for exculpatory material not within its possession or control." United States v. Raniere, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019).

Moreover, the defendant's argument that the government is required to seek out and obtain information in the possession of Credit Suisse because the bank has entered a deferred prosecution agreement ("DPA") is also wrong. Information within the possession of the

government's witnesses cannot be imputed to the government. See, e.g., United States v. Barcelo, 628 F. App'x 36, 38-39 (2d Cir. 2015) (holding that a cooperating witness was not a member of the prosecution team and therefore information in such a witness's possession could not be imputed to the government); United States v. Garcia. 509 F. App'x 40, 43 (2d Cir. 2013) (holding that the government's Brady obligations are not "limitless" and that "this Court has never held that the 'prosecution team' includes cooperating witnesses"); United States v. Avenatti, 559 F. Supp. 3d 274, 280 (S.D.N.Y. 2021) (refusing to impute information from a victim witness's phone to the government despite that at one brief point the phone was in the government's possession and observing that doing otherwise "would undoubtedly discourage victims and witnesses alike from coming forward and cooperating with law enforcement investigations"); Id. (the government "has no obligation, under Brady or otherwise, 'to seek out . . . information like a 'private investigator and valet . . . and deliver[] it to opposing counsel.'"

Indeed, Chief Judge Brodie addressed this identical issue in United States v. Hwa, No. 18-CR-538 (MKB), 2021 WL 11723583, at *53 (E.D.N.Y. Sept. 3, 2021). In that case, the defendant argued, as the defendant does here with respect to Credit Suisse, that because Goldman Sachs had entered a DPA with the government requiring it to cooperate fully with the government, the government had a Brady obligation to obtain and produce materials from Goldman Sachs. The Hwa Court rejected this argument, holding that:

> The Court is not persuaded that the Goldman Sachs Group is part of the "prosecution team" simply because it entered the DPA with the Government. As a cooperating private entity, the Goldman Sachs Group remains a third-party with its own interests and motives rather than an arm of the prosecution. See, e.g., United States v. Tomasetta, No. 10-CR-1205, 2012 WL 896152, at *5 (S.D.N.Y. Mar. 16, 2012) ("[T]he fact that a third-party corporation is cooperating with the [g]overnment's investigation — as many do — does not turn it into an 'agent' of the [g]overnment. Cooperating parties have their own sets of interests ...." (citing United States v. Josleyn, 206 F.3d 144, 153–54 (1st Cir. 2000))).

Id. The Hwa Court explained how the DPA stated that "Goldman Sachs Group received only partial credit for its cooperation because it 'was significantly delayed in producing relevant evidence, including recorded phone calls' — a fact inconsistent with [the defendant's] contention that the Goldman Sachs Group is part of the 'prosecution team.'" See id. Similarly, here, the DPA for Credit Suisse states that "the Company received partial credit" and "did not receive full credit for its cooperation because the Company significantly delayed producing relevant evidence, including recorded phone calls in which the Company's employees discussed concerns relating to conduct set forth in the Statement of Facts." See Credit Suisse DPA at 4. The Court also noted that there was no evidence that the government delegated investigative tasks to Goldman Sachs or that Goldman Sachs made strategic decisions about the prosecution. See id. Likewise, no such evidence exists here. Accordingly, the Hwa Court held, "although subject to the DPA and required to cooperate with the Government, the Goldman Sachs Group is not a member of the prosecution team and the Government cannot be deemed to have constructive knowledge of materials in the Goldman Sachs Group's possession. Therefore, the Government does not have a Brady obligation to obtain and produce these materials." Id.

Notwithstanding the applicable law, the government, in its discretion, obtained pleadings and signed filings from two cooperating witnesses, Andrew Pearse and Surjan Singh, and turned that over to the defendant. The government also turned over early 18 U.S.C. § 3500 material from Pearse, Singh, and Detelina Subeva in this case. Contrary to the defendant's assertion, the government has turned over all the documents from the U.K. Proceeding in its possession.[1] The government is not legally required to obtain any other materials outside of its possession, including from Credit Suisse, and thus, the Court should (again) deny as moot the defendant's motion to compel production of documents from the U.K. proceeding that it does not possess.

## II. The Court Should Deny the Defendant's Motion to Suppress Evidence from Grand Jury Subpoenas Issued After the Second Superseding Indictment and Before the Third Superseding Indictment

The government respectfully requests that the Court deny the defendant's request to suppress records it obtained through grand jury subpoenas in 2024, or to identify records that were obtained from grand jury proceedings in 2024. The government submits that to the extent that it has used grand jury subpoenas in this matter in 2024, it has done so properly.

### A. Legal Standard

While it is "improper to utilize a grand jury for the sole or dominating purpose of preparing an already pending indictment for trial," United States v. Bin Laden, 116 F. Supp. 2d 489, 492 (2d Cir. 2000) (quoting United States v. Dardi, 330 F.2d 316, 336 (2d Cir. 1964)), this rule has "limited reach" because a "presumption of regularity attaches to grand jury proceedings, a defendant seeking to exclude evidence obtained by a post-indictment grand jury subpoena has the burden of showing that the Government's use of the grand jury was improperly motivated." Id. (citing United States v. Leung, 40 F.3d 577, 581 (2d Cir. 1994)); see also United States v. Sasso, 59 F.3d 341, 352 (2d Cir.1995) ("There is a presumption that [a post-indictment] subpoena had a proper purpose."); United States v. Raphael, 786 F. Supp. 355, 358 (S.D.N.Y. 1992)

[1] Defense counsel has indicated that they "have reason to believe" that Credit Suisse "made filings detailing the due diligence undertaken by the company, which established the loans were bona fide, and the three employees who may have received payments had no authority to either approve these loans or effect the approval process." (Def. Mot. at 2.) Defense counsel further claims that when they spoke with Credit Suisse's counsel, "counsel expressed surprise that these materials were not turned over to us by the government but told us that he needed to check with the government before agreeing to comply with our request." (Id.) The government has conferred with counsel for Credit Suisse, who described defense counsel's characterization of their conversation as: "Totally inaccurate – I neither expressed any such surprise nor said I needed your permission." Counsel for Credit Suisse explained that defense counsel was seeking the transcript of the opening statements of Credit Suisse from the U.K. Proceeding. After confirming the date of this document, Credit Suisse counsel notified defense counsel that the government did not have the transcript of the opening statements that defense counsel was seeking. Credit Suisse counsel also notified defense counsel that if they wanted the document, they would have to request it from the English courts.

("[A]bsent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the grand jury proceedings is proper.").

Notably, the return of an indictment does not necessarily signal the end to a grand jury investigation. "Postindictment action is permitted," for example, "to identify or investigate other individuals involved in criminal schemes," or "to prepare superseding indictments against persons already charged." United States v. Jones, 129 F.3d 718, 723 (2d Cir. 1997). This may remain true even if the grand jury does not ultimately bring additional charges. In Leung, for example, the defendant sought to suppress bank records obtained through grand jury subpoena that were issued after indictment. 40 F.3d at 581. The Leung defendant argued that the bank records obtained "related to" accounts listed under the pending indictment's third count; accordingly, he claimed, the government use of a grand jury subpoena after that indictment showed the subpoena was primarily for improper evidence gathering. Id. The government represented that the grand jury subpoenas were issued as part of a continuing investigation into potential money laundering charges against Leung. Id. The district court denied the motion, finding that because there was a continuing investigation into potential money laundering charges, the issuance of the grand jury subpoena was proper. Id. The Second Circuit affirmed, finding that the defendant's accusations on timing and improper purpose were not even enough "to shift the burden to the government to come forward with evidence of specific grand jury activity in connection with the money laundering investigation" and that "it was therefore unnecessary for the Government to produce specific evidence of grand jury activity that might have bolstered this presumption." Id. at 582. See also Justice Manual 9-11.120 ("[A]fter indictment, the grand jury may be used if its investigation is related to a superseding indictment of additional defendants or additional crimes by an indicted defendant.").

B. Discussion

Here, the government is permitted to investigate other individuals involved in criminal schemes, or even to prepare a superseding indictment against the defendant, which it did. The defendant argues that because the subpoenas post-date the return of the second superseding indictment in December 2023, the "timing of these subpoenas and the records sought" reflects their dominant purpose was to obtain trial evidence. (Def. Mot. at 3.)

In support of this argument, defense counsel provides an excerpt of a Bank of America record as an "example" of the government's misuse of the grand jury process. (Id.) The defendant, however, fails to mention that the requested records pertain to "Luis Filipe Pereira Rocha Brito" and other unindicted co-conspirators and entities, such as Thyse International Inc. and Genoa Asset S.A., who helped launder the bribe and kickback payments.[2] The defendant's indictment did not preclude the government from using grand jury subpoenas to investigate potential violations of law that were committed by his unindicted co-conspirators, or from using

[2] Notably, while the defendant attached other bank business certifications as exhibits, it declined to do so with respect to the Bank of America's business records certification. That record plainly states on the letter that the name of the case was "Luis Filipe Pereira Rocha Brito." See Ex. A.

evidence obtained through those subpoenas against the defendant, including "to prepare [a] superseding indictment" against him. Jones, 129 F.3d at 723. Relatedly, the defendant asserts that because the excerpted Bank of America records are for the period between January 1, 2013, and December 31, 2017, the statute of limitations has expired, and, thus, the government could not possibly be seeking "evidence of new crimes." (Id. at 4.) The defendant is incorrect. Both wire fraud affecting a financial institution, 18 U.S.C. § 1343, and bank fraud, 18 U.S.C.§ 1344, have ten-year statutes of limitation, and of course, a conspiracy can continue for many years after if the laundering and concealment of the bribes continues.

The defendant also claims that the government cannot supersede because it "previously represented to South African authorities that the investigation into Mr. Chang was 'complete,' and admitted in connection with Mr. Chang's suppression motion that the investigation was inactive before Mr. Chang arrived in the United States." (Id. at 4.) It is unclear what the defendant is quoting with respect to the government's purported representation to the South African authorities. In any event, as stated above, the government is not precluded from investigating the defendant's unindicted co-conspirators. As to the government's assertions in connection with the suppression motion, Special Agent Adediran's affidavit states the following:

> "3. On or about March 16, 2023, I was assigned to be the case agent for this case. At the time, the case was largely dormant because defendant Jean Boustani had been acquitted, Chang was still in extended extradition proceedings, and no other defendants were in the United States or extradition proceedings.

ECF. No. 541-1. While the case was largely dormant at that time, that does not mean that once the government learned that the defendant would be extradited to the United States in July 2023 it could not continue to investigate other potential violations of law that were committed by unindicted co-conspirators. That is especially the case here, where the government learned of potential violations of law by unindicted co-conspirators through legal process that was not returned until after the defendant's extradition.

In addition, the defendant is wrong that the government could not supersede to add additional charges because of the Rule of Specialty. Because the Rule of Specialty is a sovereign prerogative, it is up to South Africa, the extraditing country — not the defendant — to determine whether it would object to any new charges in a superseding indictment. As the Second Circuit has made clear, the defendant has no standing to assert a Rule of Specialty violation. See United States v. Barinas, 865 F.3d 99, 105 (2d Cir. 2017) (holding that the defendant has no standing to assert a Rule of Specialty violation absent objection from the extraditing country).

The government respectfully requests that the Court deny the defendant's request to produce grand jury subpoenas and to suppress evidence obtained by these means. The defendant has not met its burden. If the Court were to order the production of the grand jury subpoenas on these speculative grounds, that would effectively open the flood gates for all grand jury subpoenas to all trial defendants and would gut the secrecy provisions of Rule 6(e) entirely. To the contrary, the production of grand jury subpoenas is inconsistent with Rule 6(e) because it "may reveal the essence of the grand jury proceedings." United States v. Diaz, 236 F.R.D. 470, 479-80 (N.D. Cal. 2006).

### III. The Court Should Deny the Defendant's Motion for a Bill of Particulars

The defendant moves for a bill of particulars notwithstanding the fact that defense counsel has twice now represented, verbally and in writing, that they did not need (and would not seek) a bill of particulars. Most recently, the defense counsel represented to the Court on May 23, 2024, the following:

THE COURT: You asked them for a bill of particulars.

MR. FORD: We asked them.

THE COURT: You didn't ask me to direct them to provide it.

MR. FORD: We didn't. I can.

THE COURT: I'm not asking you to.

MR. FORD: Well, Your Honor --

THE COURT: Well, it's sort of down the road now. I don't want to delay this trial.

MR. FORD: Well, the response that we got -- well, we -- it turns out we actually tried not to file unnecessary motions, right? And we raised our bill of particulars with the government, and the government said to us, our bill of particulars is the Boustani trial; transcripts, the documents, it's the same thing. We dropped it in a footnote in our brief.

THE COURT: Did you get all that material? Have you reviewed that material?

MR. FORD: We have with some -- yeah.

THE COURT: So you got your bill of particulars --

MR. FORD: **We have our bill of particulars**. And based on that representation…

THE COURT: Yes.

MR. FORD: -- we did not file for a bill of particulars.

THE COURT: Okay. The record has been made.

Ex. B (Tr. of May 23, 2024 Oral Argument) at 27-28 (emphasis added); see also Def. Mot. to Dismiss, ECF No. 543 n. 8 ("After several telephonic and email meet and confers the Government represented that the answers to our questions were answered by the Trial Transcript and

Government Exhibits in the Jean Boustani trial and that the proofs would be the same as in the Boustani trial. Based on this representation, Mr. Chang does not seek to compel a bill of particulars."). Regardless, the defendant's purported confusion about the Indictment has no merit and a bill of particulars is not warranted here.

A. Legal Standard

The Federal Rules of Criminal Procedure require only that an indictment set forth a "plain, concise, and definite written statement of the essential facts constituting the offense." Fed. R. Crim. P. 7(c). Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise, and preclude double jeopardy. See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004); United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks omitted), abrogated on other grounds by United States v. Marcus, 628 F.3d 36, 41 (2d Cir. 2010).

Neither the Federal Rules of Criminal Procedure nor the Second Circuit require that the government "particularize" its evidence; rather, a bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he or she is accused. See Torres, 901 F.2d at 234. If the information sought by the defendant is provided in the indictment or through some other means, including discovery, a bill of particulars is not warranted. See Chen, 378 F.3d at 163; Walsh, 194 F.3d at 47; Torres, 901 F.2d at 234; United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Urso, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005). The defendant bears the burden of showing that denial of the requested particulars will result in "prejudicial surprise at trial or will adversely affect his rights." United States v. Maneti, 781 F. Supp. 169, 186 (W.D.N.Y. 1991).

It is inappropriate to use Rule 7(f) to limit the government's evidence or flesh out its prosecutorial theories in advance of trial. See Urso, 369 F. Supp. 2d at 272 ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); see also United States v. Barret, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[T]he court is mindful that it cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories") (quotations and citations omitted); United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Albunio, No. 91-CR-0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established."). Ultimately, "[t]he applicable standard for whether a bill of particulars should issue is not whether the information would be helpful to the defense, but whether it is necessary." United States v. Taylor, 17 F. Supp. 3d 162, 178 (E.D.N.Y. 2014); id. at 178-79 (noting that "[a] bill of particulars may not be used by the defense as a fishing expedition or to force the government to reveal all its evidence before trial," and denying defendant's motion for bill of particulars); United States v. Aliperti, 867 F.

Supp. 142, 148 (E.D.N.Y. 1994). Consequently, a motion for a bill of particulars must be denied where it would "unduly restrict the Government's ability to present its case." United States v. Baez, 62 F. Supp. 2d 557, 559 (D. Conn. 1999).

There are three reasons animating these restrictions on the use of bills of particulars. First, the use of bills of particulars "is not comparable to discovery in civil [cases] because of the nature of the issues, the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury." United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) (internal quotation marks and citations omitted). Second, the government must not be compelled "to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain away the [g]overnment's case." United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted). Finally, the government should not be restricted from "using proof it may develop as the trial approaches." Id. (citation omitted).

B. Discussion

As an initial matter, the defendant mischaracterizes the government's position. The defendant claims that the "government continues to refuse to tell us the specifics of the misstatements that remain in the indictment." (Def. Mot. at 4.) That is simply untrue. The government recently told the defendant by email correspondence, with respect to the misstatements, as we told the Court: "We say what those affirmative misrepresentations are about, and it's no secret here what those affirmative misrepresentations were. They were in the contracts. With the investors. There's the full record from the Boustani trial, if they're curious, and if they want to email us, we'll be glad to point them to it. Thus, if you would like use to point you to transcript citations in the Boustani trial where the misrepresentations are discussed, we are glad to do so. Let us know." The defendant did not respond.

Nevertheless, it is unclear what purported confusion exists about the government's charges. As the Indictment clearly states, the defendant is charged with wire fraud conspiracy and money laundering conspiracy. The defendant is no longer charged with securities fraud conspiracy. In addition, the defendant is no longer charged with conspiring to make misstatements in connection with the Exchange. With respect to the misstatements, the defendant is charged with conspiring "to defraud investors and potential investors in the Proindicus, EMATUM and MAM financings, including Credit Suisse and Investment Bank 1 [VTB], through numerous material misrepresentations and omissions relating to, among other things: (i) the use of loan proceeds; and (ii) bribe and kickback payments to bankers and Mozambican government officials. (Third Superseding Indictment ("Indictment") ¶ 23.)

As for the allegations involving the IMF, the defendant mischaracterizes the Indictment. The Indictment alleges that until approximately 2016, Mozambique was required to limit its borrowing from foreign lenders in order to receive financial assistance from the IMF. (Indictment ¶ 18.) It further alleges that Mozambique was also required to make certain disclosures to the IMF, including related to its borrowing and indebtedness. (Id.) And that the defendant made the decision to structure the Proindicus loan as a loan to a special purpose vehicle with a government guarantee to avoid IMF limitations. (Id.) ("On or about December 22, 2012, CHANG wrote a letter to Privinvest Co-Conspirator 2, which was forwarded to an employee of Credit Suisse ("Credit Suisse Employee 1"), an individual whose identity is known to the Grand

Jury, explaining that "the financing of this project is still constrained by the IMF imposed limitation on the Government for Mozambique to accept commercial credit for commercial projects. Therefore, we have devised an alternative solution whereby an SPV [Special Purpose Vehicle] . . . will be formed.") And that in 2015, "Mozambican government officials received inquiries from the IMF concerning the use of some of the loan proceeds." (Id. ¶ 52.)

Thus, as the government explained in its Opposition to the Defendant's Motions in Limine:

> At trial, the government intends to admit evidence and argue that the defendant: (1) knew about the IMF debt limit; (2) structured the loan agreements at issue in this case to circumvent the debt limit; (3) instructed co-conspirators to remove from the loan guarantees a representation that Mozambique would notify the IMF about the existence of the guarantees; and (4) did not notify the IMF about the Proindicus and MAM loan guarantees. This evidence is critical in demonstrating the defendant's important role in the conspiracy, including his involvement in structuring the loans and guarantees, as well as his efforts to conceal the loan guarantees from the public.

ECF No. 585 at 1-7 (explaining the government's allegations and trial evidence involving the IMF in detail).

Moreover, the information the government has provided the defendant to date provides him with sufficient notice of the pending charges. In addition to the Indictment, the government has provided discovery on a rolling basis; submitted lengthy motions in limine describing its case and the exhibits it plans to use at trial; and disclosed experts and their opinions, including a Mozambican law expert. The defendant also has the benefit of the Boustani trial transcripts, which includes answers from the government's cooperating witnesses as well as the government's opening statement and summations in that case. This is more than sufficient to notify the defendant of the charges against him. Despite all of the above material, on June 6, defense counsel directed the government to provide a bill of particulars identifying, among other things, "each co-conspirator you allege Mr. Chang conspired with, including the date that coconspirator joined and left each conspiracy," to "identify which payments you believe were 'kickbacks' including the date and time of the transactions," and "the specific law that prohibits said 'kickbacks.'"

In sum, the defendant's arguments are baseless. The defendant has the information he needs to know to prepare for trial. No more should be required from the government at this late stage. In light of the speaking Indictment, the discovery, the full trial record in Boustani, the motions to dismiss and motions in limine, the Court should deny the defendant's motion for a bill of particulars.

## IV. The Government Has Produced the Information in the Admitted Defense Exhibits from the *Boustani* Trial

The defendant has requested that the government produce all of the marked and admitted defense exhibits from the Boustani trial.[3] The defendant does not cite any caselaw or authority for his request and simply claims, in conclusory fashion, that these "records are important." (See Def. Mot. at 5.)

Regardless, the government has produced over 1,000 marked and/or admitted defense exhibits from the Boustani trial, including all the information in the admitted defense exhibits except for three photographs.[4] If the defendant would like any of these three photographs, the government can produce them to the defendant.

To the extent that there are additional marked defense exhibits that were not admitted at the Boustani trial, the government undertook a best-efforts search of its files and produced all the marked defense exhibits in its possession. At trial, as the Court is aware, not all impeachment exhibits the defense offers are provided to the government in advance. Indeed, there were times at trial where counsel for Mr. Boustani would offer a defense exhibit, show it for the first time to the government on the screen at trial, and would sometimes either withdraw the exhibit or offer it, and if the government objected, and the objection was sustained, not have the exhibit admitted. In such circumstances, the defense never provided the exhibit to the government, and it was never in the government's possession. To the extent that the defendant believes there are additional marked defense exhibits that the government has not produced, the government is willing to re-review the trial record to see if such an exhibit was used for impeachment purposes and then withdrawn or had a sustained objection and thus, was never in the government's possession.

[3] The defendant has also requested the government's exhibits from the Boustani trial. The government's exhibits were, of course, from the government's discovery in Boustani, which the government has produced, and thus, this information is already in the defendant's possession.

[4] DX 9219 (a google map photograph of a boat in 2019), DX 152 (a photograph of Iskandar Safa) and DX 138 (photograph of Chang at a shipyard).

***

For the foregoing reasons, the Court should deny the defendant's motions to compel as moot and deny the defendant's motion for a bill of particulars and for suppression of certain evidence in their entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Hiral Mehta
Genny Ngai
Assistant U.S. Attorneys
(718) 254-7000

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: /s/
Peter L. Cooch
Trial Attorney
(202) 924-6259

MARGARET A. MOESER
Acting Chief, Money Laundering & Asset Recovery Section
Criminal Division
U.S. Department of Justice

By: /s/
Morgan J. Cohen
Trial Attorney
(202) 941-4529

cc: Adam Ford, Esq. (by ECF)
Jamie Hoxie Solano, Esq. (by ECF)