UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MANUEL CHANG,

Defendant.

**MEMORANDUM & ORDER**

**18-CR-00681 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

On June 12, 2024, Defendant Manuel Chang ("Defendant" or "Chang") submitted a letter raising four issues and seeking the court's intervention at a status conference held the following day. (*See* Chang Ltr. (Dkt. 586).) The court reserved decision at this conference, noting that a written Order will follow. (*See* Min. Entry dated 6/13/2024.) This Memorandum & Order ("M&O") resolves those issues.

## I.   BACKGROUND

The court assumes familiarity with the factual background and procedural history of this case, as set forth in detail in prior Opinions. (*See, e.g.,* Speedy Trial M&O dated 12/21/2023 (Dkt. 523); Suppression M&O dated 3/27/2024 (Dkt. 547); Omnibus M&O dated 5/31/2024 (Dkt. 573).) Five days after this court's latest M&O denying the Defendant's omnibus pre-trial motion, a grand jury sitting in the Eastern District of New York returned a third superseding indictment ("Indictment") against Chang, which, among other changes, eliminates the conspiracy to commit securities fraud count and two specified unlawful activities for purposes of the conspiracy to commit money laundering count. (Indictment (Dkt. 578); *see* Gov't Notice of Superseding Indictment (Dkt. 575) (discussing changes in new Indictment).)

Chang is now charged with two conspiracy counts: Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349 (Count

One) and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h) (Count Two), in connection with a scheme to defraud investors of over $2 billion in loans for purported maritime projects in Mozambique. (Indictment ¶¶ 56-59; *id.* ¶¶ 23-26.)

On June 12, 2024, the Defendant submitted to the court a letter outlining "four issues" that "affect the July 15th trial" in advance of a status conference scheduled for the following day. (Chang Ltr. at 1.) The court directed the Government to respond in writing before the conference. (*See* Order dated 6/12/2024; *see also* Gov't Response (Dkt. 587).) At the status conference, the court heard from both parties regarding the issues outlined in the Defendant's letter and reserved decision. (*See* Min. Entry dated 6/13/2024; June 13 Conf. Tr. (Dkt. 591).)

## II. DISCUSSION

Chang raises the following four issues to the court and requests that: (1) the Government be ordered to immediately produce all documents and *Brady* material in its possession pertaining to its cooperator, Credit Suisse; (2) the Government be ordered to immediately cease using grand jury subpoenas to obtain trial evidence in this case, and that such documents be suppressed from the Government's use at trial; (3) the Government provide a bill of particulars to clarify the charges in the Indictment; and (4) the Government confirm whether it has turned over all exhibits marked and possessed by the Government in the *Boustani* trial. (Chang Ltr. at 1.) The court takes each request in turn.

### A. Credit Suisse Materials

Chang first seeks all documents in the Government's possession that are from Credit Suisse, an investment firm that pled guilty to preparing certain investment documents that allegedly misled investors into purchasing EMATUM loans and loan participation notes that subsequently defaulted. (*Id.* at 1; Indictment ¶¶ 26,

41-43, 52-54.) Specifically, Chang seeks Credit Suisse's "opening statements" or "opening submissions" and the exhibits attached thereto, purportedly filed under penalty of contempt in the U.K. Proceeding,[1] (*see* June 13 Conf. Tr. at 12:2-7), detailing information about who in the Mozambican Government was directing the three maritime projects, as well as due diligence undertaken by Credit Suisse. (Chang Ltr. at 2.) Chang contends that these filings are highly exculpatory because they may be used to discredit the Government's theory that Chang took "bribes" in exchange for his signatures backing the loans at issue, and to establish that the loans were indeed bona fide rather than fraudulent. (*Id.*) Moreover, Chang asserts that while it has subpoenaed Credit Suisse for these documents, counsel for Credit Suisse "expressed surprise" that the materials were not already turned over to Chang's counsel by the Government and represented that "he needed to check with" the Government before agreeing to comply with Chang's requests.  (*Id.*) At the conference, Chang noted that the conversation with counsel for Credit Suisse implied that the documents were, "in fact," in the Government's possession and that the Government was "interfer[ing]" with Chang's ability to obtain documents from Credit Suisse. (June 13 Conf. Tr. at 11:10-23, 14:5-16.)

In response, the Government reiterated that it has "turned over all the documents from the U.K. Proceeding in its possession" and should the Defendant require more, it is not the Government's burden to seek out additional materials outside of its possession. (Gov't Response at 1-3.) The Government also denied the Defendant's characterization of its conversation with Credit Suisse's counsel. The Government asserted that it conferred with counsel

---

[1] This is a civil litigation taking place in the United Kingdom brought by the Republic of Mozambique against Credit Suisse and its subsidiaries, as well as Surjan Singh, Andrew Pearse, and Detelina Subeva, former Credit Suisse employees and Defendants who have pleaded guilty in this case. (*See* Gov't Response to Discovery Mot. (Dkt. 570) at 1.)

for Credit Suisse who described Chang's counsel's characterization of their conversation as "[t]otally inaccurate." (*Id.* at 3 n.1.) The Government noted that they discussed a potential Government motion to quash the subpoena, but that counsel for Credit Suisse never expressed needing "permission" from the Government to "do anything on behalf of his client." (*Id.* at 3 n.1; June 13 Conf. Tr. at 15:3-8, 21:1-3.)

This first issue raised by Defendant can be placed into three categories. First, the request to direct the Government to produce records from Credit Suisse *in its possession* that are exculpatory. Given the Government's representations—both in its written submission and at the status conference—that it has produced all documents in its possession pertaining to the U.K Proceeding, including from Credit Suisse, Chang's first request for an order directing the Government to produce these documents is denied as MOOT.

Second, the court considers Chang's request to direct the Government to obtain documents *not already in its possession* on the basis of its deferred cooperation agreement ("DPA") with Credit Suisse.

While true that *Brady* commands upon the Government a "constitutional duty to disclose evidence favorable to the accused where such evidence is material to guilt or punishment," *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001), that duty is not limitless. *See United States v. Garcia*, 509 F. App'x 40, 43 (2d Cir. 2013). Rather, *Brady* extends only to material evidence that is known to the prosecutor and those who are "an arm of the prosecutor" (or part of the "prosecution team"), including those who are "intimately involved in the prosecution." *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975); *see also United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022) ("[W]hile a prosecutor has a duty . . . to learn information when that information is possessed by others on the 'prosecution team,' undisclosed

information that is not known to anyone on that team does not give rise to a *Brady* violation."). Notably, the Second Circuit has "never held that the 'prosecution team' includes cooperating witnesses." *Garcia*, 509 F. App'x at 43.

Chief Judge Brodie considered and rejected a similar argument in *United States v. Hwa*, No. 18-CR-538 (MKB), 2021 WL 11723583, at *51 (E.D.N.Y. Sept. 3, 2021). In holding that Goldman Sachs was not considered part of the prosecution team by virtue of its DPA with the Government, Judge Brodie explained that "[a]s a cooperating private entity, the Goldman Sachs Group remains a third-party with its own interests and motives rather than an arm of the prosecution." *Id.* at *53. There, Goldman Sachs only received "partial credit" for its cooperation due to its "significant[] delay[] in producing relevant evidence." *Id.* Further, there was no evidence that the Government delegated investigative tasks to Goldman Sachs or that Goldman Sachs made strategic decisions about the prosecution. *Id.* Upon these facts, the court concluded that Goldman was not a member of the prosecution team, and the Government was thus not responsible for obtaining and producing documents in Goldman Sachs' possession under *Brady*. *Id.* at *55.

Regarding the DPA in this case, Credit Suisse also received partial credit for its cooperation due to its significant delay in producing "relevant evidence, including recorded phone calls in which the Company's employees discussed concerns relating to conduct set forth in the Statement of Facts [as incorporated in the DPA]." (*See* Credit Suisse Plea Agreement (Dkt. 583-1) at 4; Credit Suisse DPA (Dkt. 583-2) at 4; *see also* Attachment A to Credit Suisse Plea Agreement ("Statement of Facts") at A-18). As in *Hwa*, there is no evidence here that the Government has delegated any investigative tasks to Credit Suisse nor are there allegations that Credit Suisse is making any decisions regarding the prosecution. Thus, any request to require the Government to

affirmatively seek *Brady* material not in its possession and pertaining to Credit Suisse is DENIED.

Lastly, as to the Government's alleged interference with the ability to obtain information from Credit Suisse through a subpoena, the court directed the Government, in open court, not to interfere in the Defendant's ability and lawful right to obtain documents from Credit Suisse. (June 13 Conf. Tr. at 19:16-21.)[2]

This issue is thus resolved. Should concerns arise regarding compliance with or sufficiency of subpoenas in the future, the court will address them at that time.

### B.   Grand Jury Subpoenas

Chang next asserts that the Government has been improperly using grand jury subpoenas for trial preparation. He requests that the court order the Government to immediately cease the use of grand jury subpoenas for trial evidence, identify all records obtained through this method, and suppress such evidence from the Government's use at trial. (Chang Ltr. at 2-4.)

"The law is settled in this [C]ircuit and elsewhere that it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985). There is a "presumption of regularity [that] attaches to grand jury proceedings." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). The burden is thus on the defendant seeking to exclude evidence obtained by a post-indictment grand jury subpoena to show that the "use of the grand jury was improperly motivated." *Id.* Post-indictment grand jury investigations may take place after the return of an indictment if done to investigate other individuals involved in criminal

---

[2] The parties also reserved their rights to enforce and challenge subpoenas as necessary.

6

schemes or to prepare superseding indictments against individuals already charged. *See United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997).

Chang argues that materials from the Government's recent productions evidence that the Government has been using grand jury subpoenas to improperly obtain trial evidence in violation of Rule 6. (Chang Ltr. at 3.) To support this argument, Chang points to certain documents that appear to have been recovered through grand jury subpoenas after the return of the second superseding indictment filed in December 2023 and before the April 23, 2024 status conference, which Chang asserts is when the Government decided to supersede the indictment a third time. (*Id.* at 3.) For example, bank record certifications produced by the Government show a search conducted in March 2024 for U.S. wires that occurred between January 2013 and December 2017, the time period at issue for the upcoming trial. (*Id.* at 3-4.) Chang argues that the timing of the subpoenas to obtain these records reflect that their "dominant, if not sole, purpose was to obtain trial evidence." (*Id.* at 3.)

The Government rebuts Chang's argument and offers an alternative reason for the use of grand jury subpoenas, distinct from preparation for Chang's trial. The Government submits that it has used post-indictment grand jury subpoenas to "investigate potential violations of law that were committed by [Chang's] unindicted co-conspirators" and to obtain evidence for use against Chang in order to prepare the third superseding indictment. (Gov't Response at 4-5; June 13 Conf. Tr. at 21:15-22:5.) In doing so, the Government notes specific individuals that would be the focus of the grand jury proceedings, that the Government received information that led to the issuance of grand jury subpoenas, and how the documents put forward by Chang relate to the investigation of these individuals. (Gov't Response at 4-5; June 13 Conf. Tr. at 21:15-22:5.) And the Government

rebuts the idea that new charges could not be brought following evidence of additional crimes within the statute of limitations or that it could not add additional charges under the Rule of Specialty. (Gov't Response at 4-5; June 13 Conf. Tr. at 23:14-17.))

The court finds that Chang has not met his burden in showing an improper use of grand jury proceedings. While the use of such subpoenas may reasonably raise suspicion in light of the lack of additional charges against Chang or any co-conspirators at this time, "a grand jury investigation is not improper merely because it does not result in formal charges." *Leung*, 40 F.3d at 581-82. And the Government has responded to the suspicions raised by the Defense. Ultimately, the Defense provides no evidence to conflict with the Government's submission and its representations in open court that it has used grand jury subpoenas for its ongoing investigation into new crimes and other unindicted individuals involved in criminality. The Defense raises doubts about such investigations, (*see, e.g.*, June 13 Conf. Tr. at 22:22-23:1), but Chang has not met his burden to overcome the presumption that the grand jury proceedings were proper such that a review of all documents obtained through the grand jury process or suppression of said documents is warranted. *See Leung*, 40 F.3d at 582 ("[Defendant's] speculations about possible irregularities in the grand jury investigation were insufficient to overcome the presumption that this investigation was for a proper purpose. It was therefore unnecessary for the Government to produce specific evidence of grand jury activity that might have bolstered this presumption.").

Chang's requests for an order directing the Government to cease use of grand jury subpoenas, to identify all records obtained through grand jury subpoenas and for suppression of all records obtained therein are therefore DENIED.

## C.  Bill of Particulars

Chang next seeks a bill of particulars to clarify the charges in the third superseding indictment. (Chang's Ltr. at 4.)

"A bill of particulars is not a matter of right." *United States v. Abakporo*, 959 F. Supp. 2d 382, 388 (S.D.N.Y. 2013). Rather, a bill of particulars is required "only where the indictment is so general that it does not advise the defendant of the specific acts of which he is accused." *Id.* "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

Prior to the filing of the third superseding indictment, the court asked the Defense why they haven't requested a bill of particulars from the court. Defendant's counsel stated on the record that they did not ask the court to direct the Government to provide a bill of particulars because when they raised it with the Government, the Government represented that "our bill of particulars is the *Boustani* trial; transcripts, the documents." (*See* Ex. B to Gov't Response ("Oral Arg. Tr dated 5/31/2024.") (Dkt. 587-1) at 27:4-28:14.) Based upon that representation and review of the documents, the Defense did not find it necessary to request a bill of particulars. (*Id.*)

It is unclear what has changed to make a bill of particulars necessary now when it would not have been necessary prior to the third superseding indictment. Rather than adding additional counts and factual allegations, the latest Indictment removed a count and other allegations and, as with the prior indictment, provides significant factual detail underpinning Defendant's charges. (*See* Indictment; *see also* Gov't Notice of Superseding Indictment at 1.) The Government also provided a detailed letter advising the Defendant of the changes to the Indictment and has offered to provide additional information in in the form of transcript citations from the *Boustani* trial, as needed to clarify the

9

factual allegations alleged. (*Id.*; June 13 Conf. Tr. at 27:8-28:15.) Moreover, discovery in this case has been ongoing, providing defense counsel additional avenues to gather information. *See United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.")

The Defendant nevertheless argues that a bill of particulars is necessary to provide information concerning when Mr. Chang allegedly joined the conspiracy and exited the conspiracy. (Chang's Ltr. at 4-5 (noting that the Indictment no longer includes overt acts detailing the contours of the conspiracy).) However, courts have found that such information does not provide a sufficient basis for a bill of particulars. *See United States v. Sterritt*, 678 F. Supp. 3d 317, 328 (E.D.N.Y. 2023) (collecting cases); *see also United States v. Barret*, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) ("[W]hat defendants seek is in the nature of the 'wheres, whens, and with whoms' that Courts have held to be beyond the scope of a bill of particulars.") A bill of particulars may "help" in providing further information concerning the case the Government plans to present at trial, but that is not sufficient. *See United States v. Reid*, 650 F. Supp. 3d 182, 197 (S.D.N.Y. 2023) ("The important question is whether the information sought is necessary, not whether it is helpful").

In sum, Defendant has not shown that a bill of particulars is necessary to mount a defense. Chang's request is therefore DENIED.

### D.  Exhibits from *Boustani* Trial

Finally, Chang sought a confirmation on the record that the Government has produced all marked exhibits it possesses from the *Boustani* trial. (Chang Ltr. at 5.) At the conference, the Government represented that "based on [its] review of the trial transcripts, all the admitted exhibits, or at least the information in them . . . [defense counsel] now [has] that set." (June 13

Conf. Tr. at 31:10-16.) As for marked defense exhibits, the Government noted that it has tried to locate and produce all exhibits that it was given but that they may not have all of them. (*Id.* at 31:17-32:3.) The court then directed the Government that should it locate any additional exhibits that were admitted into evidence at the *Boustani* trial, they should be turned over immediately to the defense. (*Id.* at 32:17-20.)

The defense appeared satisfied with the Government's representation at the conference. (*Id.* at 32:4-12.) Accordingly, the court finds this request MOOT in light of the representations made on the record.

## III. CONCLUSION

For the reasons discussed in this Memorandum and Order, the issues raised by letter dated June 12, 2024 (*see* Dkt. 586), and at the June 13, 2024 conference are resolved as follows:

(1)    Chang's request for Credit Suisse materials in the Government's possession is DENIED as MOOT. Any request to require the Government to affirmatively seek *Brady* material not in its possession but in Credit Suisse's possession is DENIED. To the extent Chang seeks documents outside of the Government's possession through use of subpoenas or otherwise, the Government is DIRECTED not to interfere with the Defendant's ability to obtain such documents. All interested parties may seek the court's assistance should a dispute arise.

11

(2)    Chang's requests for an order enjoining the Government from using post-indictment grand jury subpoenas, identification of all records obtained through grand jury subpoenas, and for suppression of the same are DENIED.

(3)    Chang's request for a bill of particulars is DENIED.

(4)    Chang's request for exhibits from the *Boustani* trial are DENIED as MOOT. The Government is further DIRECTED to immediately produce any additional exhibits admitted at the *Boustani* trial that it may locate between now and through the end of trial.

SO ORDERED.


Dated:    Brooklyn, New York
           June 21, 2024

                                      s/Nicholas G. Garaufis
                                      NICHOLAS G. GARAUFIS
                                      United States District Judge