

August 2, 2024

**VIA ECF**
The Honorable Nicholas G. Garaufis
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Chang, Case No. 18-CR-681</u>

Dear Judge Garaufis:

      We submit this letter in further support of including the missing witness instruction in the jury charge. As highlighted herein, the instruction is appropriate because—as we represented at the charge conference—we subpoenaed a corporate representative from Credit Suisse who was familiar with the three loans at issue in this case, which the government quashed. Under those circumstances, Minister Chang was not able to call a corporate representative from Credit Suisse, while the government was able to do so by way of its cooperation agreements with Credit Suisse. Accordingly, the Court's proposed missing witness instruction is appropriate.

      Yesterday at the charge conference, the government stated that if the defense "wanted to call someone from Credit Suisse to discuss the loans, a factual witness to discuss the loans, there was no issue with that, I don't think, in the subpoena." Tr. at 2445:9-12. That is not an accurate description of the subpoena. It is also not an accurate description of the government's position while quashing that subpoena and when the issue came before this Court again at the pretrial conference.

      On June 6, 2024, the defense obtained and served a trial subpoena for Credit Suisse. The subpoena sought, among other things, "a witness familiar with the ProIndicus, EMATUM, and MAM loans." *See* ECF No. 596-1. The defense made clear both in our communications with Credit Suisse's counsel and in our briefing to compel compliance with this subpoena that this representative could be one or more appropriate witnesses. Our motion to compel asked the Court to compel Credit Suisse to produce one or more witnesses to testify about, among other things, the loans. ECF No. 596. The defense made clear that:

> Such witness is necessary to Mr. Chang's right to a complete defense. The government has just decided to present Credit Suisse as a victim and is relying on many of Credit Suisse's documents to put together a story of what occurred with these three projects.

*See* ECF No. 596 at 12. The defense went further to point out that we needed a corporate representative from Credit Suisse to testify about "information that squarely contradicts the government's narratives of 'victim' status or 'materiality.'" *Id.* The defense specifically pointed

out that "the government has agreements that obligate Credit Suisse to make its employees available to the government for testimony on certain matters in this case[.]" *Id.*

The government, in response, did not take the position it expressed at yesterday's charge conference—that Minister Chang should be permitted to have a corporate representative testify about the loans. The government took precisely *the opposite* position in quashing the subpoena. There is no question that the government understood that it was trying to stop the defense from subpoenaing a corporate representative from Credit Suisse to testify about the loans. The government specifically addressed the issue, stating:

> Finally, the government moves to quash the remaining request for a witness familiar with the "Proindicus, EMATUM and MAM loans." . . . . The defendant's subpoena for a witness to testify about the three loans should also be quashed.

ECF No. 610 at 12-13. Remarkably, the government took the position—without any legal support whatsoever—that the defendant could not properly subpoena a corporate representative from Credit Suisse at all because it was an entity, notwithstanding that the government *did precisely that* when subpoenaing a representative from Quinn Emanuel to testify on its behalf. *See id.*; *see also* Ex. A (Gov.'s Quinn Emanuel trial subpoena). The defense, by contrast, cited numerous cases in support of the routine practice of subpoenaing an entity to provide a corporate representative to testify on behalf of the entity. ECF No. 618 at 7. The government also claimed that there was no showing that such testimony was probative of disputed issues in this case—a position that is not tenable. ECF No. 610 at 13.

As a result of the government's arguments, Judge Pollak quashed the subpoena in its entirety, including a corporate representative who could testify about the loans. ECF No. 628 at 21.

On July 5, 2024, in light of the government's successful effort quashing the defense's ability to compel the testimony of a Credit Suisse corporate representative who was familiar with the three loans, the defense requested a missing witness instruction for instances where a defendant did not have equal access to the witness. ECF No. 632 at 9. The requested instruction was from Sand's Modern Federal Jury Instructions. *Id.*

At the pretrial conference in this case the Friday before trial, the defense again raised the issue of not being able to subpoena a corporate representative of Credit Suisse to discuss the issue of materiality, and that the government was going to (as they did) elicit testimony from individuals who no longer worked at Credit Suisse to give the jury the impression that they were speaking on behalf of Credit Suisse about what would or would not have been important to Credit Suisse. Pretrial Conference Tr. at 18-20. In response, the government told the Court: "this has been litigated before Judge Pollak. She issued an order on this. It's been quashed. We don't need to relitigate that issue here." *Id.* at 20.

It is undisputed that the government has unique access and control of Credit Suisse by way of its cooperation agreement and deferred prosecution agreement with Credit Suisse and its subsidiary. Under the terms of those agreements, Credit Suisse has been required to undertake

best efforts to provide the government with present and former officers, directors, employees, and agents of Credit Suisse for testimony at federal trials. *See, e.g.,* ECF No. 583-1 at 10 ¶¶ b & c. Credit Suisse has also been obligated to identify for the government witnesses who may have material information about the loans. *Id.*

At the charge conference, the defense made clear that the Court's proposed missing witness instruction—Proposed Court Instruction 15—was appropriate in light of the defense's attempt to compel the testimony of a corporate representative from Credit Suisse to testify about the loans and the government's efforts to stop Minister Chang from properly compelling that testimony.

There is no question that this instruction is appropriate in this case. When "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" and fails to produce such witnesses, the jury may infer that "the testimony, if produced, would be unfavorable" to that party." *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) (quoting *Graves v. United States,* 150 U.S. 118, 121(1893)); *see also Burgess v. United States,* 440 F.2d 226, 231 (D.C.Cir.1970); McCormick, On Evidence § 272, at 804–08 (3d ed. 1984); C. Wright, Federal Practice and Procedure, Criminal § 489, at 740 (2d ed. 1982). "The weight of authority indicates that in the context of the evidentiary inference to be drawn from a party's failure to call an available witness, the availability of a witness depends on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility." *Id.* at 1170 (internal quotations and alterations omitted).

Here, the government had access to corporate representatives of Credit Suisse to testify about the loans and chose not to call them. The defense tried to subpoena a representative for this testimony, and the government successfully interfered with that effort. The government could have argued that the subpoena should be narrowed to only permit testimony about the loans, but it chose instead to argue, several times, that it should be, and remain, quashed altogether. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("it is not upon the person who faces punishment to cull the good from the bad").

The testimony would have been relevant and probative to the issue of materiality—what Credit Suisse actually did and did not find important in these loan decisions. That testimony would have been favorable to the defendant in light of Credit Suisse's guilty plea admitting that it engaged in misconduct vis-à-vis these loans—including misconduct beyond the "hidden" actions of Mr. Pearse and Mr. Singh. *See* ECF No. 593 at 4 (outlining the government's assertions as to why Credit Suisse pleaded guilty). Further, this Court ordered in response to the government's *in limine* motion that "testimony from Pearse, Singh or Subeva would not be considered objectively reasonable testimony on issues of materiality in light of their guilty pleas." ECF No. 668 at 12. Minister Chang did not have the ability to introduce a corporate representative who could provide reasonable testimony on this issue because the government stopped him from doing so.

Under those circumstances, the Court's proposed instruction is appropriate. If that instruction is not included, Minister Chang objects to the inclusion of Instruction 16 because it is

FORD O'BRIEN LANDY   |   275 Madison Avenue, Fl. 24 NY, NY 10016   |   P: 212.858.0040   |   fordobrien.com

not accurate—Minister Chang did not have the equal ability to compel the testimony of a corporate representative of Credit Suisse.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

 /s/ *Jamie Hoxie Solano*
Adam C. Ford
Jamie H. Solano
Anjula S. Prasad
Stephen Halpin III
275 Madison Avenue, 24th Floor
New York, NY 10016
(212) 858-0040

*Counsel for Manuel Chang*

Cc: All Counsel of Record (via ECF)