

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

HDM/GN/PC/MC
F.# 2016R00695

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 31, 2024

By ECF and Email

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     United States v. Manuel Chang
        Criminal Docket No. 18-681 (NGG)

Dear Judge Garaufis:

The government respectfully writes regarding the defendant's requests for: (1) multiple special interrogatories, including with respect to venue on Count One; (2) a limiting instruction regarding the "wine for Pantero" email (ECF No. 703 at 1-4); (3) a missing witness charge (ECF No. 702); (4) inclusion in the wire fraud instruction of confusing and misleading language from Ciminelli; and (5) a change in the money laundering instruction premised on incorrect law.

1.      The Defendant's Requests for Special Interrogatories are Meritless and Threaten to Seriously Confuse the Jury

The defendant appears intent on presenting a verdict form to the jury that confuses multiple issues, ignores controlling case law, and conflates burdens of proof. That is improper and should be rejected.

Despite knowing that the government intended to proceed on both first-brought venue under 18 U.S.C. § 3238, as well as § 3237(a), in connection with Count One, the defendant did not initially request a jury interrogatory on venue. Instead, he requested a special verdict form with respect to Count Two, the money laundering conspiracy charge, which would erroneously require the jury to unanimously agree on the Specified Unlawful Activities ("SUA") underlying each object of the charged conspiracy. (ECF No. 632.) On July 26, 2024, the government submitted a letter to the Court explaining that the Second Circuit has rejected the notion that an SUA charged within a money laundering offense is an essential element of the crime, and, therefore, that it would be error to require jury unanimity with respect to the charged SUAs in this case. (ECF No. 686.)

The next day, in apparent recognition that its SUA interrogatories were improper,  the defense pivoted and submitted a letter requesting a special verdict form "on the issue of venue for Count One so it is clear which venue provision the jury determined the government proved <u>beyond a reasonable doubt</u>."  (ECF No. 688 at 1 (emphasis added).)   The government submits that the only purpose of this request is to confuse the jury, and that there is no sound legal reason to include a venue interrogatory.

<u>First</u>, the Second Circuit has already impliedly accepted that venue may be established under § 3238 in connection with a wire fraud scheme.  As the Court previously observed, in <u>United States v. Miller</u>, 808 F.3d 607, 611 (2d Cir. 2015), the Second Circuit found that "venue does not become improper under § 3238 'simply because it might also have been properly laid elsewhere pursuant to § 3237(a).'"  (ECF No. 626 at 22 (quoting <u>Miller</u>, 808 F.3d at 611)).  In <u>Miller</u>, the Second Circuit rejected as dicta its "passing comment" in <u>United States v. Gilboe</u>, 684 F.2d 235 (2d Cir. 1982), that § 3238 "applies only to offenses 'not committed in any district,' as its title indicates."  <u>Id</u>. at 621 (quoting <u>Gilboe</u>, 684 F.2d at 238–39).  <u>Miller</u> clarifies that § 3238 "may apply even when certain offense conduct occurs in the United States."  <u>Id</u>.  Notably, <u>Gilboe</u> concerned a wire fraud scheme— just like the scheme charged in this case — and in reviewing its <u>Gilboe</u> decision, the Second Circuit pointedly did <u>not</u> find that § 3238 could not be used to establish venue for such a scheme.

The government submits that this effectively moots the defendant's main argument for requesting a special interrogatory on venue for Count One.  The defendant has stated that such interrogatory is necessary in order to preserve his ability to appeal the government's reliance on § 3238 in the event of his conviction for wire fraud conspiracy.  The Second Circuit, however, has already impliedly blessed the use of § 3238 to establish venue over a wire fraud scheme.  That should end the issue.  Indeed, consistent with <u>Miller</u>, the Court has twice rejected the defendant's argument — in its motion <u>in</u> <u>limine</u> and its motion to dismiss: "the Government has sufficiently alleged venue under the statute such that it may advance this venue theory before the jury." (Mem. and Order at 23, ECF No. 626.)  In that decision, the Court also dismissed the defendant's reliance on <u>Gilboe</u>, 684 F.2d at 239, because, as the Court unequivocally stated, "[t]he Second Circuit rejected this argument." (ECF No. 626 at 22); <u>see</u> <u>also</u> <u>id</u>. (citing 2 Charles Alan Wright, Fed. Prac. and Proc. Crim. § 304 (4th ed. 2004).  The Court again rejected this argument in denying the motion to dismiss the Third Superseding Indictment:

> The court has already addressed this [first-brought venue as to wire fraud] argument in its previous Memorandum & Order that responded to the parties' various motions in limine. (See MIL M&O at 21-26.)  In that Order, the court found that the Government sufficiently alleged venue and was thus permitted to prove venue under 18 U.S.C. § 3238 at trial. (See id.)  That ruling is law of the case. See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" (quoting United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002))).

(ECF No. 670 at 4 (Order denying Motion to Dismiss).)

<u>Second</u>, the government is not aware of any cases in this District where venue interrogatories have been submitted to the jury, nor have any such cases been cited by the defense.  See

United States v. Mackey, Case No. 21-cr-80 (AMD), 2023 WL 6879613, at * 21 n.35 (Oct. 17, 2023) (stating that "[t]he Court was not aware of any case law that required submitting venue to the jury as a separate question") (internal quotations omitted); United States v Booth, 21-CR-652 (JSR), 2022 WL 3139651, at 3 (S.D.N.Y. 2022) (holding that there is no need to have venue on verdict form).  The government does not believe the Court should break new ground, especially because the Second Circuit appears to have already decided the issue the defendant seeks to preserve for appellate purposes.

Third, there is simply no way to include a venue interrogatory as to Count One without seriously confusing the jury and prejudicing the government.  Indeed, in his letter requesting the venue interrogatory, the defendant twice claims that the jury should be required to specify which venue provision the government has proved "beyond a reasonable doubt."  (ECF No. 688 at 1; 2 ("[W]e respectfully ask that the Court have the jury specify which provisions they believe the government has proven beyond a reasonable doubt.").)  Obviously, it is black letter law the government need only prove venue by a preponderance of the evidence, as the Court's draft jury charge reflects.  The government is concerned that if the Court includes a venue interrogatory, then, just like the defendant, the jury will confuse the government's burden of proof on venue with its burden of proof as to the other issues the jury must resolve.  Such confusion threatens to seriously prejudice the government.

Conversely, the defendant would not be prejudiced by the use of a general verdict form.  As the government explained during the charge conference, the appellate court could still review the record and determine whether the government adduced sufficient evidence to prove either or both venue bases by a preponderance of the evidence.  And, as noted above, the Second Circuit has impliedly found that the government may establish venue under § 3238 in connection with the type of fraud scheme alleged in Count One.  Thus, the defendant would still be afforded his right to the jury's unanimous agreement on venue.

Fourth, and alternatively, should the Court determine that a venue interrogatory is appropriate as to Count One, it should be drafted in a way that preserves the government's right to bring that charge in another district in the event that the jury cannot unanimously agree on one or more venue bases.  In Smith v. United States, 599 U.S. 236 (2023), the Supreme Court recently held that "[t]he reversal of a conviction based on a violation of the Venue or Vicinage Clauses, even when styled as a 'judgment of acquittal' under Rule 29, plainly does not resolve the bottom-line question of criminal culpability," and, therefore, the Double Jeopardy Clause does not prohibit the government from retrying the case in another district.  599 U.S. at 253 (internal quotations omitted).  Consequently, any such interrogatory should be drafted in way that ensures that the jury's determination as to venue on Count One is entirely separate from its determination of the defendant's guilt or innocence, and reminds the jury that the government need only prove venue by a preponderance of the evidence.[1]  Given the inherent complexity of such an interrogatory, the government reiterates its belief that it is prejudicial and unnecessary.

---

[1] The government thus submits three forms for the Court's consideration.  Exhibit A contains the government's preferred verdict form.  The proposed forms in Exhibits B and C are based on the verdict form used in United States v. Ng, Case No. 18-cr-538 (MKB), ECF No. 198.  Exhibit B contains the government's proposed form if the objects of the conspiracy are included in Count Two (which the government believes is unnecessary as the Court's charge already instructs the jury that unanimity is required as to one or more charged objects); and Exhibit C contains the government's

2. Since There Was No Missing Witness in This Case, There Is No Reason to Issue the Defense's Requested Missing Witness Instruction

The defendant should not be permitted to sandbag the government by failing to call a corporate representative from Credit Suisse and then requesting a missing witness instruction for the witness he made no effort to obtain. After the defendant's subpoena to Credit Suisse was quashed for being overbroad and vague, the defendant could still have submitted an appropriate subpoena to Credit Suisse requesting the testimony of a corporate representative, or any fact witness. He chose not to, perhaps because he knew it would be improper to call a witness for the sole purpose of impeaching that witness, as the defendant has made clear he intended to do. Regardless, the defendant could have secured the appearance of a witness from Credit Suisse. His failure to do so in no way justifies the inclusion of a missing witness instruction in the jury charge.

As an initial matter, the defendant mischaracterizes both his subpoena to Credit Suisse and the government's opposition to it, claiming that the government changed its position on this issue at the charge conference. In June 2024, the defendant served an overbroad and vague subpoena on Credit Suisse which sought, among other things, a witness familiar with "the ProIndicus, EMATUM, and MAM loans[.]" (ECF No. 596-1.) The defendant misleadingly quotes from the government's motion to quash, using ellipses to omit that the government specifically opposed the subpoena because it was "impermissibly vague and broad." The government did not argue that the defendant could never subpoena Credit Suisse. Rather, it argued that the subpoena ran afoul of Rule 17 because "the defendant has made no effort to identify what specific issues he wants testimony on regarding the three loans, and why that testimony is probative of the disputed issues and admissible." Id. The government made the same point at the charge conference on Thursday. (Tr. 2446 (Mehta) ("It wasn't quashed in its entirety . . . It was simply that it was too broad.").)

The defendant also claims that the "government quashed" his subpoena. That is wrong. Judge Pollak denied the defendant's motion to compel a witness to testify about the loans because she concluded that "the subject matter for which the defendant seeks the witness or witnesses — the loans — is overly broad and vague, making it difficult to identify appropriate witnesses." (ECF No. 628 at 21.)[2]

_____

proposed form if venue is included in Count One and the objects of the conspiracy are included in Count Two.

[2] Although the government argued that the defendant could not subpoena Credit Suisse for a representative to testify on behalf of the company as a 30(b)(6) witness would in a civil case, Judge Pollak did not find — one way or the other — that the defendant could not subpoena a corporate representative of Credit Suisse. Additionally, the defense claims that the government issued a subpoena for a corporate representative from Quinn Emmanuel; that is not true. The purpose of that subpoena was for the testimony of Ms. Reith, a fact witness who testified about her personal role in collecting documents from Privinvest for authentication purposes. Nor was Ms. Leemhuis a corporate representative of VTB Capital; she testified as a fact witness regarding her role in VTB Capital's approval of the loans. Indeed, at the time of her testimony she was no longer even employed by VTB Capital. Her testimony that VTB Capital would not have approved the loans had it known about payments to Mozambican officials was based on her personal experience working on the loan agreements, certain of which she herself signed.

Nothing in the order prevented the defendant from serving an appropriately tailored subpoena. The defendant simply chose not to.[3]

When "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" and fails to produce such witnesses, the jury may infer that "the testimony, if produced, would be unfavorable" to that party. United States v. Torres, 845 F.2d 1165, 1169 (2d Cir. 1988) (quoting Graves v. United States, 150 U.S. 118, 121 (1893)). "However, when a witness is equally available to both sides, 'the failure to produce is open to an inference against both parties." Id. (quoting 2 Wigmore, Evidence § 288, at 208 (Chadbourn rev. 1979) (emphasis in original)). No instruction is necessary where the unpresented testimony would be merely cumulative. United States v. Tyers, 487 F.2d 828, 831 (2d Cir. 1973), cert. denied, 416 U.S. 971 (1974). Whether a missing witness instruction should be given is within the sound discretion of the court. United States v. Mittelstaedt, 31 F.3d 1208 (2d. Cir. 1994).

In light of the facts and law cited above, the Court should not give the missing witness instruction for two reasons. First, Credit Suisse was equally available to both parties. The defendant could have served an appropriately tailored subpoena on Credit Suisse but chose not to. That Credit Suisse was obligated to cooperate with the government under the terms of its DPA is irrelevant because that obligation in no way limited the defendant's right or ability to subpoena a witness from Credit Suisse. Second, there is no evidence that some other unidentified witness Credit Suisse would have offered non-cumulative testimony about the ProIndicus, EMATUM, or MAM loans. Indeed, the jury heard from two former Credit Suisse employees — Andrew Pearse and Surjan Singh, perhaps the two Credit Suisse employees most knowledgeable about the transactions — who testified at length about the loans, including that they hid their fraudulent conduct from the bank. VTB and other investors were uniform in testifying that the false statements in the loan documents were material to their investment decisions, and the defendant offers no basis for the Court to conclude that any other Credit Suisse employee would have testified differently. In sum, the defendant's request has "'the usual aura of gamesmanship' that frequently accompanies requests for a missing witness charge" and should be denied. Torres, 845 F.2d at 1171 (quoting United States v. Erb, F.2d 438, 445 (2d Cir. 1976)).

3. The Court Should Use the Government's Proposed Limiting Instruction with Respect to the Wine and Honey Issues

The government requests that the Court provide the following instruction as to the September 16, 2013, email from Jean Boustani to Antonio Do Rosario regarding the shipment of more than a thousand bottles of wine, honey, and olive oil — all produced on the French estate of Iskander Safa — to the defendant's wife shortly after the EMATUM deal closed:

> The government introduced Government Exhibits 2463, 2463-A, and 2463-A-T, an email dated September 16, 2013, and receipt for a shipment of wine,

---

[3] The defendant also misleadingly argues that at the pretrial conference it "again raised the issue of not being able to subpoena a corporate representative of Credit Suisse to discuss the issue of materiality." (ECF No. 702 at 2.) At the pretrial conference, the defense complained that it wanted a representative "to get out that Credit Suisse entered into the guilty plea in the DPA," not to testify generally about ProIndicus, EMATUM, and MAM. 7/12/2024 Pretrial Conference Transcript at 20.

> honey, and olive oil to Lizette Chang.  You may consider this evidence for
> the limited purpose of showing a relationship between the alleged co-
> conspirators and as an act in furtherance of the charged conspiracies.  It is
> up to you to determine what weight this evidence should be afforded, but
> you should not consider it for any purpose other than the purpose for which
> it was admitted.

The Court should provide this instruction in Part II: The Substantive Charges, Instruction 3 Conspiracy Generally, after the first full paragraph on page 36 of the Draft Jury Charge.

The government's proposed language more accurately describes the basis for admitting this email and the corresponding attachments in evidence.  The government offered these documents not only as evidence of the relationship between the defendant, Safa, and the other individuals, but also because it was a co-conspirator statement made in furtherance of the conspiracy.  (See Tr. at 889 – 892 (Ngai) (" . . . this is a co-conspirator statement, it's probative of the relationship between the defendant, Jean Boustani, Safa, and it's also probative of the undue and improper benefits that were extended to the defendant").)  Although the government does not intend to argue in closing that the delivery of these items were themselves corrupt payments, the government should still be permitted to argue, and the jury should still be permitted to infer, that the defendant's co-conspirators sent the wine, honey, and oil in furtherance of the charged conspiracies.  (Id.  (The Court: "All right. I'm going to allow it, primarily, based upon the timing of it in connection with other activities that mapped that could, to the jury, demonstrate a strong business relationship between these parties. And you know, the argument can be made — it may or may not be made — that in business, one aspect of maintaining and enhancing a business relationship is making gratuity — making gifts to the other participant in the conspiracy, and so it does have probative value in that regard.").)  The Court should therefore adopt the government's proposed instruction.

4.  <u>The Court Should Reject Unnecessarily Injecting Confusing Language About the Right to Control Theory in the Jury Instruction</u>

The defendant has erroneously argued, time and again, that the government has asserted a right to control theory of wire fraud.  The Court has rejected this argument.

> Chang's argument that <u>Ciminelli</u> requires dismissal fails, however, because the
> Indictment does not rely on the right-to-control theory. Rather, the Indictment
> focuses on allegations that Chang sought to deprive investors and potential
> investors of money, a "traditional property interest." <u>Id</u>.; <u>see also</u> <u>United States v.
> Tournant</u>, No. 22-CR-276 (LTS), 2023 WL 8649893, at *9 (S.D.N.Y. Dec. 13,
> 2023) ("The wire fraud conspiracy charged in the Indictment thus had, as the
> Indictment alleges, the object of obtaining and retaining tangible property-
> money.")

(ECF No. 573 at 8 (Order denying Motion to Dismiss).)

Now, upon the conclusion of this trial, the defendant again tries to place this argument before the jury by placing in surplusage language that apparently has never been used in a jury instruction in the Second Circuit (and the defendant does not cite to any such instruction).  The Court should reject

this language as it will only confuse and mislead the jury.  The government has made clear that the conspiracy was to lie to obtain money from the investors – not to deprive them of some intangible property rights.  The defendant wants to insert this instruction and then argue to the jury that because the misrepresentations involve "potentially valuable economic information" – that the government has not proven wire fraud - thus conflating the issue of misrepresentations with the property rights at issue.  This is exactly what they tried to do in their motion to dismiss.  The Court rejected this argument:

> In making his right-to-control argument, Chang misreads the Indictment and what the Government intends to prove at trial. He states that the Indictment "explicitly alleges that Chang and his alleged coconspirators deprived investors of potentially valuable economic information necessary to make discretionary economic decisions" and that "[a]t no point does the Indictment allege the deprivation of any traditional property interest." (Mot. at 14-15.)  To show this, Chang states, for instance, that the Indictment alleges that he "deprived investors of information about 'the use of loan proceeds.'" (Id. at 15 n.10.) But this quote from the Indictment refers to the alleged misrepresentation made by the coconspirators, not the victims' property interest.

(ECF No. 573 at 10 (Order denying Motion to Dismiss).)  As the Court further explained:

> The deprivation of information relating to the "use of loan proceeds" refers not to the property interest but to the misrepresentation that was an aspect of the scheme to defraud investors to obtain their money. (Id.) See also Weaver, 860 F.3d at 94 (noting elements of the wire fraud statute).  As Judge Matsumoto recently stated, "Ciminelli did not reject the premise that depriving a victim of information in order to induce the victim to part with traditional property can be fraud." United States v. An, No. 22-CR-460 (KAM), 2024 WL 2010017, at *8 (E.D.N.Y. May 7, 2024). "Ciminelli simply rejected the notion that information itself can be property." Id.  Such is the case here. The court thus denies Chang's motion to dismiss Count One, conspiracy to commit wire fraud, under Ciminelli.

(Id. at 11.)

After thoroughly rejecting these arguments, the Court should reject the defendant's transparent attempt to interject this language into the wire fraud instruction and argue that because the misrepresentations about the "use of loan proceeds" involve the deprivation of information—the paying of bribes and kickbacks — that this somehow refers to the property interest — it does not — the property interest is money.

5. The Defendant's Proposed Language for the Promotional Money Laundering Instruction Is Superfluous and Without Legal Support

The defendant seeks to add the underlined language to the Court's instruction regarding promotional money laundering:  "The second element is that the individual acted with intent to promote the carrying on of one or more crimes, referred to as a "specified unlawful activity" or "SUA," not just that the transfer had the effect of doing so."  This language is superfluous because the first clause of the

Court's instruction already requires the government to prove that the transfers were undertaken with the intent to promote an SUA.  The defendant's reliance on United States v. Garcia, 587 F.3d 509, 517 (2d Cir. 2009) is misplaced.  That case did not address promotional money laundering under 18 U.S.C. § 1956(a)(2), but rather, concealment money laundering under § 1956(a)(2)(B)(i).  In connection with that offense, Garcia held that "the Supreme Court held in Cuellar that the statute 'requires proof that the purpose — not merely effect — of the transportation was to conceal or disguise a listed attribute' of the funds."  Id. at 509 (quoting Cuellar v. United States, 553 U.S. 550, 566-67 (2008)).  Garcia thus clarifies the meaning of the "designed in whole or in part" language used in § 1956(a)(2)(B) — it is entirely unconnected to promotional money laundering.  Accordingly, the government submits that the defendant's proposed language is unnecessary and without legal support, and the Court should instruct the jury on this aspect of Count Two using the language it originally drafted.

Respectfully submitted,

MARGARET A. MOESER
Chief, Money Laundering
& Asset Recovery Section
Criminal Division
U.S. Department of Justice

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:   /s/

By:   /s/

Morgan J. Cohen
Trial Attorney
(202) 616-0116

Hiral Mehta
Genny Ngai
Assistant United States Attorneys
(718) 254-7000

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Dept. of Justice

By:   /s/

Peter Cooch
Trial Attorney
(202) 924-6259

cc:   Clerk of Court (NGG) (by ECF)
      Defense counsel (by ECF)

8