UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -against-

MANUEL CHANG,

               Defendant.

**MEMORANDUM & ORDER**
**18-CR-0681 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Manuel Chang was once Mozambique's Minister of Economy and Finance. (United States' Opp'n to Def.'s Mot. for Compassionate Release ("Gov'ts Opp'n") (Dkt. 844) at 1.) Now, he is Inmate Number 10553-506 in Federal Correctional Institution, Danbury ("FCI Danbury"). (Final J. (Dkt. 824) at ECF p.1.) He is scheduled to complete his sentence before the end of next month, at which point he will be deported to Mozambique. (Def.'s Reply in Supp. of Mot. for Compassionate Release ("Def.'s Reply") at 1.) Nonetheless, he seeks compassionate release so that he may "return home to Mozambique . . . before his expected deportation." (*Id.*; *see* Def.'s Mot. for Compassionate Release ("Def.'s Mot.") at 4.) Because the court sees no "extraordinary and compelling reasons" to warrant such a de minimis sentence reduction, it DENIES Chang's motion. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(a)(1)(A).

## I. BACKGROUND[1]

On August 8, 2024, a jury found Manuel Chang guilty of conspiracy to commit wire fraud and conspiracy to commit money laundering. (*See* Jury Verdict (Dkt. 732).) At Chang's January 17,

---

[1] The court assumes familiarity with the relevant facts and procedural history of this case. For clarity, however, it briefly summarizes the context leading to this order.

1

2025 sentencing hearing, the court sentenced him to 102 months imprisonment, with the understanding that the Bureau of Prisons ("BOP") would credit him for time served awaiting trial. (Sentencing Tr. (Dkt. 801) at 62-64.) He began serving his sentence that same day. (*See* Final J. at ECF p.1 (listing January 17, 2025 as the "Date of Imposition of Judgment").)

Litigation continued, however, over the contents of the court's written final judgment. On July 1, 2025, for example, Chang requested that "the [c]ourt include specific language . . . reflecting that [it] sentenced [him] to a term of imprisonment on the belief that he would receive full credit for all his time served."[2] (Def.'s July 1, 2025 Ltr. to Court (Dkt. 820) at 1.) The court, however, noted the next day in a memorandum that including such a statement was "not appropriate" under Supreme Court and Second Circuit precedent. (Mem. Dated 7/2/2025 (Dkt. 822) at 2-3 (citing *United States v. Wilson*, 503 U.S. 329, 334 (1992); *Werber v. United States*, 149 F.3d 172, 179 (2d Cir. 1998)).) It then issued its final judgment the same day. (*See* Final J. at ECF p.4.)

Forty days after the court issued its written final judgment, BOP transferred Chang from Metropolitan Detention Center ("MDC") to FCI Danbury. (Gov'ts Opp'n at 2; Def.'s Mot. at 2.) It credited Chang for time served awaiting trial and good behavior while incarcerated. After Chang received those credits, his 102-month sentence dwindled down to just over 14 months. Consequently, his release date is set for March 26, 2026. (Def.'s Mot. at 2.)

---

[2] Similarly, litigation continued over the amount of restitution Chang would need to pay his victims. (*See* Sentencing Tr. (Dkt. 801) at 32.) The court determined that amount in a May 16, 2025 order. (Mem. & Order Dated 5/16/25 (Dkt. 803) at 20.). Out of an abundance of caution, the listed the amount of restitution as "TBD" in its final judgment. (Final J. at ECF p.4.) In that judgment, the court instructed Chang to "comply with an order of restitution to be determined if applicable after the various motions for reconsideration on restitution have been decided by the court." (*Id.* at ECF p.3.)

2

## II.  LEGAL STANDARD

To qualify for compassionate release, a defendant must establish that he has satisfied three requirements. First, he must have "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf," or 30 days must have lapsed "from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Second, he must demonstrate that "extraordinary and compelling reasons" warrant a reduction in the term of imprisonment. *Id.* Third, he must show that "the [applicable] factors set forth in [18 U.S.C. §] 3553(a)" do not weigh against release. In analyzing these requirements, a court must only grant a sentence reduction if doing so would be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Under those policy statements, "extraordinary and compelling reasons" for a sentence reduction include: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was a victim of abuse; (5) other reasons which "are similar in gravity" to the first four reasons; and (6) a change in the law if the defendant received an unusually long sentence and has served 10 years of that term of imprisonment. U.S.S.G. § 1B1.13(b).

## III.  DISCUSSION

Chang has failed to demonstrate that "extraordinary and compelling reasons" warrant his release. *See* 18 U.S.C. § 3582(c)(1)(A).

3

Thus, he is ineligible for compassionate release.[3] *See id.* The court now explains why.

Broadly, Chang states that three "extraordinary and compelling reasons" merit his release. (Def.'s Mot. at 4 (citing 18 U.S.C. § 3582(c)(1)(A)).) The first is his "deterioration in physical health because of the aging process." (*Id.*) He cites his "multiple health issues, including stage 3 kidney disease, hypertension, type 2 diabetes, and hyperlipidemia." (*Id.* at 5.) The second reason Chang discusses is the "unanticipated and onerous conditions of incarceration" that he faced at MDC after his January 2025 sentencing hearing. (*Id.* at 4.) Chang notes that the court took into account the conditions at MDC "when granting [him] a downward variance" for the 18 months that he spent there prior to sentencing. (*Id.* at 6.) But he stresses that "the [c]ourt was not aware, and therefore did not consider, that . . . [he] would spend an *additional* seven months at MDC after being sentenced . . . while waiting to be transported to FCI Danbury." (*Id.* (citing *United States v. Nunez*, No. 23-CR-517 (AT), 2024 WL 4504493, at *6 (S.D.N.Y. Oct. 16, 2024).) Chang contends that these additional seven months at MDC were particularly difficult for him because he had received surgery and could not follow his doctor's post-operation instructions. Those instructions included admonishments to "reduce his sodium intake, increase his intake of water, fiber, fruits and vegetables, and exercise for 30 minutes

---

[3] For this reason, the court need not address if Chang exhausted his administrative remedies. *See United States v. Henry*, No. 13-CR-0091 (RRM), 2020 WL 3791849, at *4 n.3 (E.D.N.Y. July 6, 2020) (citing *United States v. Zehner*, No. 19-CR-0485 (AT), 2020 WL 1892188, at *2 (S.D.N.Y. Apr. 15, 2020)). Similarly, the court "need not consider" whether the countervailing "§ 3553(a) factors" weigh against release. *See United States v. Woods*, No. 18-CR-0033 (NGG), 2024 WL 3758817, at *3 (E.D.N.Y. Aug. 12, 2024).

a day."[4] (*Id.* at 7.) The third reason that Chang raises to support his release is that BOP deprived him of "earned time credits" under the First Step Act that should have "ma[de] his release date on or about December 12, 2025, instead of March 26, 2026." (*Id.* at 8, 10.)

The court disagrees with Chang. As the Government explains, he has failed to meet his high burden to demonstrate "extraordinary and compelling reasons" justifying his early release. (*See* Gov't Opp'n at 5.) To start, BOP can readily manage each of Chang's age-related conditions while he is incarcerated. Although he might have had difficulty in MDC adhering to his doctor's instructions, he presents no evidence that the same is true at FCI Danbury. (Gov't Opp'n at 7 n.8.) His "unfortunate but common and non-serious age-related health conditions . . . are being appropriately managed and treated by the BOP" such that they do not warrant his immediate release. *See United States v. Garcia,* 758 F. Supp. 3d 47, 55 (E.D.N.Y. 2024).

So too when accounting for the additional seven months that Chang spent in MDC after his sentencing hearing. Other than the limitations on his diet and exercise, he "offers no specific evidence establishing that he experienced extreme conditions" during those seven months, "much less conditions that would be 'similar in gravity' to the criteria in U.S.S.G. § 1B1.13(b)(1)-(4)." (Gov't Opp'n at 7.) What is more, the delay in Chang's transfer from MDC was largely of his own making. He continued fighting the Government over the written final judgment's language and

---

[4] Although Chang does not mention this himself, the Government notes in response that he only remained in MDC for two months following his surgery. (Gov't Opp'n at 7.)

5

contents for nearly six months after he received his oral sentence.[5] Not once during this period does Chang contend that he sought immediate transfer to FCI Danbury. And forty days after the court was finally able to enter its written final judgment,[6] BOP transferred Chang out of MDC. (Gov'ts Opp'n at 2; Def.'s Mot. at 2.)

Third, Chang's arguments regarding his earned time credits are not properly before this court. As he admits, he "currently has a 28 U.S.C. § 2241 petition for habeas relief pending in the U.S. District Court for the District of Connecticut," which is "the appropriate motion and court for a prisoner to challenge his terms of confinement." (Def.'s Mot. at 10 n.4.); *see Chang v. Flowers*, No. 3:25-CV-1838 (VDO) (D. Conn. filed Oct. 30, 2025). Chang is not the first defendant to concurrently seek compassionate release from this district so that he may be deported early. In *United States v. Perez Sanchez*, the court explained that the district of confinement "is better positioned to resolve the factual questions that govern . . . both" the defendant's parallel § 2241 petition and his motion for compassionate release. No. 16-CR-661 (ARR), 2024 WL 3581234, at *3 (E.D.N.Y. July 30, 2024). So too here,

---

[5] (*See, e.g.*, Def.'s Ltr. Seeking Co-Defendant Andrew Pearse's Sealed Sentencing Submissions (Dkt. 784); Letter Br. in Opp'n to Restitution (Dkt. 787); Def.'s July 1, 2025 Ltr. to Court.) In the single instance where the Government requested a one-week extension during these six months, Chang consented. (*See* Gov'ts April 2, 2025 Ltr. to Court (Dkt. 792).)

[6] Lest Chang contend that the court itself was dilatory in entering its written final judgment, it did so as expeditiously as was practicable. Indeed, it entered judgment even though Chang's co-defendants had already sought leave file motions for reconsideration of the May 16, 2025 restitution order. (*See* Detelina Subeva's May 23, 2025 Ltr. to Court (Dkt. 805); Surjan Singh's May 23, 2025 Ltr. to Court (Dkt. 806); Mot. to Continue by Andrew Pearse (Dkt. 814).) The court accommodated the corresponding uncertainty from the anticipated motions by listing Chang's restitution amount as "TBD" in its written final judgment (Final J. at ECF p.4.)

given the "factual ambiguities" that the parties dispute. *See id.*; (Def.'s Reply at 8-9).

Finally, Chang's argument that the Government does not "adequately consider . . . Chang's circumstances as a whole" fails to persuade. (*See* Def.'s Reply at 6.) As an initial matter, Chang's argument that his additional time in MDC was particularly onerous is largely based on circumstances relating to his age.[7] (*See* Def.'s Mot. at 4, 6.) Also, the Government discusses in detail additional arguments that Chang raises regarding his rehabilitation. (Gov'ts Mot. at 8.) Chang, however, concedes that his "rehabilitation efforts" can only support early release "in conjunction with" the other "unique circumstances" of his case. (Def.'s Reply at 9.) Moreover, other context surrounding this case countenances *against* finding "extraordinary and compelling reasons" to order Chang's immediate release. (*See* Def.'s Reply at 6; 18 U.S.C. § 3582(c)(1)(A).) He is currently scheduled to be released before the end of next month. Then, he will be sent home to Mozambique as he wishes. (Def.'s Mot. at 2.) Any order granting Chang's motion would merely accelerate that process by a few weeks. He has not alleged that FCI Danbury poses an imminent danger to his health, and the District of Connecticut is currently considering his § 2241 petition that he already completed his sentence due to his First Step Act credits. *See Flowers*, No. 3:25-CV-1838. Thus, the "circumstances as a whole" that Chang invokes further undercut support for motion before this court. (*See* Def.'s Reply at 6.)

In sum, Chang has not demonstrated "extraordinary and compelling reasons" that warrant his early release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b).

---

[7] Again, that two of these additional seven months in MDC were after his surgery. (*See* Gov'ts Opp'n at 7.)

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Chang's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

Dated:   Brooklyn, New York
         February 12, 2026

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

8